FOSTER *v.* DRAVO CORP.

No. 73–1773.   Argued January 20, 1975—Decided February 18, 1975

*Harry R. Sachse* argued the cause for petitioner. With him on the brief were *Solicitor General Bork, Assistant Attorney General Hills, Robert E. Kopp, Harold C. Nystrom,* and *Bobbye D. Spears.*

*Robert H. Shoop, Jr.,* argued the cause for respondent. With him on the brief was *Clyde H. Slease.*

Opinion of the Court by MR. JUSTICE MARSHALL, announced by MR. CHIEF JUSTICE BURGER.

Through the Military Selective Service Act, Congress has sought to protect veterans returning to civilian jobs from being penalized for having served in the Armed Forces. Section 9 of the Act, 62 Stat. 614, as amended, 50 U. S. C. App. § 459, ensures a returning serviceman the right to be restored to his job with the same levels of seniority, status, and pay that he would have enjoyed if he had held the job throughout the time he was in the military.[1] This case presents the question whether the statute entitles a veteran to vacation benefits when, because of his departure for military service, he has failed

---

[1] Section 9 (b) provides a right to re-employment for any serviceman who "has left or leaves a position . . . and . . . makes application for reemployment within ninety days after he is relieved from such training and service." Section 9 (b)(B)(i) adds that if the serviceman is "still qualified to perform the duties of such position, [he shall] be restored by such employer . . . to such position or to a position of like seniority, status, and pay." Section 9 (c), which governs the rights of those restored to positions after return from the service, provides in relevant part:

"(1) Any person who is restored to a position in accordance with the provisions of . . . this section shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of . . . this section should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

to satisfy a substantial work requirement upon which the vacation benefits are conditioned.

## I

Petitioner, Earl R. Foster, began working full time for respondent Dravo Corp. in 1965. He worked 22 weeks for the company during that year and earned 20 hours of paid vacation eligibility.[2] In 1966, he worked the entire year and earned the standard second-year vacation benefits,[3] for which he subsequently accepted payment.

In March of the following year, petitioner took a military leave of absence from his job. Before leaving, he worked the first seven weeks of 1967 for the company, and upon his return some 18 months later he worked the last 13 weeks in 1968. Because the collective-bargaining agreement between petitioner's union and Dravo required employees to work a minimum of 25 weeks in each calendar year in order to earn full vacation benefits,[4]

---

[2] The collective-bargaining agreement between Dravo and petitioner's union, the Industrial Union of Marine and Shipbuilding Workers of America, AFL–CIO, governed the eligibility conditions for vacation benefits. In his first year with the company, petitioner was eligible for four hours of paid vacation for each month worked, up to a maximum of 40 hours. Art. XIV, § 1.

[3] Under the collective-bargaining agreement, the length of the vacation earned each year increases with the employee's seniority. The ordinary second-year vacation is seven days' leave with pay. After the second year, the vacation increases by one day per year, for the first five years with the company, and then by one week for each five years of "continuous employment," to a maximum of five weeks. Ibid.

[4] The agreement provides that after the first year an employee can qualify for a vacation if he has received earnings in at least 25 workweeks during the calendar year. A vacation earned in one year can be taken during the next year at a time designated by the company. When an employee is laid off prior to taking his earned

Foster was not awarded any benefits for either year. Since that time, he has continued to work full time for Dravo and has received full vacation benefits from the company for each year of his employment.

Unhappy with the denial of vacation benefits for 1967 and 1968, petitioner brought suit against Dravo in the District Court for the Western District of Pennsylvania.[5] He sought credit for full vacation benefits in both years, claiming that since he would have earned two vacations if he had worked for respondent throughout the time he was in the service, § 9 of the Military Selective Service Act requires that he be credited with the benefits even though he failed to meet the 25-week work requirement in either year.

The District Court held that since the vacation benefits in question did not accrue automatically with continued employment, it did not violate the statute to deny them to employees on military leave of absence. The Court of Appeals for the Third Circuit agreed with the District Court that petitioner had no statutory right to full vacation benefits. From its examination of the contract and other related factors, the court concluded that the vacation right in dispute was not a perquisite of seniority but an earned benefit, and was thus unavailable to a returning serviceman who had not satisfied the work requirement. Noting that a limited pro rata vacation provision in the collective-bargaining agreement might provide an alternative basis for petitioner to receive some vacation benefits for 1967 and 1968, the

---

vacation, the company gives him his vacation pay at that time, regardless of when his vacation was scheduled. *Ibid.*

[5] Petitioner has been represented by the Government throughout this action. By statute, the United States Attorney is charged with representing claimants under § 9 of the Military Selective Service Act, if the claimant reasonably appears entitled to the benefits in dispute. 50 U. S. C. App. § 459 (d).

court remanded the case to the District Court for further proceedings on that narrow question. 490 F. 2d 55 (1973). We granted certiorari, 419 U. S. 823 (1974), because of an apparent conflict with the decisions of the Courts of Appeals for the Seventh and Ninth Circuits. See *Ewert* v. *Wrought Washer Mfg. Co.*, 477 F. 2d 128 (CA7 1973); *Locaynia* v. *American Airlines*, 457 F. 2d 1253 (CA9), cert. denied, 409 U. S. 982 (1972). We affirm.

II

The Selective Training and Service Act of 1940, 54 Stat. 885, 890, which was very similar to the present 50 U. S. C. App. § 459 (c)(1),[6] provided that any person leaving a civilian job to enter the military would be entitled to be restored to a position of "like seniority, status, and pay" upon his return unless circumstances had so changed "as to make it impossible or unreasonable to do so." The statute further required that the veteran be restored "without loss of seniority" and be considered "as having been on furlough or leave of absence" during the period of his military service.

On the first of several encounters with the Act, this Court interpreted the guarantee against loss of seniority rights to mean that the veteran's time in the service must

[6] The 1940 Act was essentially re-enacted in the Selective Service Act of 1948, 62 Stat. 604. The name of the Act was changed in 1951 to the Universal Military Training and Service Act, 65 Stat. 75. In 1967 it was renamed the Military Selective Service Act of 1967, 81 Stat. 100. It was given its present name, the Military Selective Service Act, in 1971, 85 Stat. 348. The present §§ 9 (b) and 9 (c)(1) have remained largely unchanged since 1940, and § 9 (c)(2) has been preserved in its current form since the re-enactment of 1948.

The re-employment provisions of the Act apply not only to those drafted under the provisions of the Act, but also to men and women who enlist voluntarily in the Armed Forces, as long as the period of service does not exceed four, or in certain cases, five years. 50 U. S. C. App. § 459 (g)(1).

be credited toward his seniority with his employer just as if he had remained on the job throughout. *Fishgold* v. *Sullivan Drydock & Repair Corp.*, 328 U. S. 275, 285 (1946). To deny him credit for time spent in the military would mean that the veteran would lose ground by reason of his absence. This, the Court stated, would violate the statutory principle that the serviceman "does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." *Id.*, at 284–285. See also *Oakley* v. *Louisville & Nashville R. Co.*, 338 U. S. 278, 283 (1949).

After the *Fishgold* decision, Congress re-enacted the statute, adding language that expressly codified the holding in that case. The amendment provided that a veteran must be restored to his position with the status that "he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration." 62 Stat. 604, 615–616, 50 U. S. C. App. § 459 (c)(2).

In subsequent cases, the Court has consistently applied the statute to assure that benefits and advancements that would necessarily have accrued by virtue of continued employment would not be denied the veteran merely because of his absence in the military service. *McKinney* v. *Missouri-Kansas-Texas R. Co.*, 357 U. S. 265, 272 (1958). On the other hand, where the claimed benefit requires more than simple continued status as an employee, the Court has held that it is not protected by the statute. See *id.*, at 273; *Tilton* v. *Missouri Pacific R. Co.*, 376 U. S. 169, 181 (1964).

In *Accardi* v. *Pennsylvania R. Co.*, 383 U. S. 225 (1966), the Court applied these principles for the first time to a benefit not traditionally considered a seniority right.

The dispute in that case concerned a veteran's eligibility for a severance payment. Under the applicable collective-bargaining agreement, the amount of severance pay due each employee depended on the length of the employee's "compensated service" with the respondent railroad. The railroad argued that the Act was inapplicable because the amount of the severance payment did not depend directly on seniority. The Court, however, took a broader view. Looking beyond the narrow characterization of seniority rights in the collective-bargaining agreement, the Court concluded that the severance payments were not intended as a form of deferred compensation for work done in the past, but rather as a means of compensating employees for the loss of rights and benefits accumulated over a long period of service. Accordingly, the Court held that the severance payments in that case were "just as much a perquisite of seniority as the more traditional benefits such as work preference and order of lay-off and recall." *Id.,* at 230.

Two years later, in *Eagar* v. *Magma Copper Co.,* 389 U. S. 323 (1967), the Court applied the statute to a vacation and holiday pay provision in a collective-bargaining agreement. The petitioner in that case had satisfied all the work requirements for the benefits in question, but he had not met the further conditions that he be employed on the one-year anniversary date of his starting work with the company, and that he be on the payroll for the three months preceding each paid holiday.

In a *per curiam* opinion, the Court reversed the judgment for the company on the authority of *Accardi*. Since the petitioner had met all the contractual work requirements and would have been eligible for the contested benefits if he had simply remained on the company payroll, it was unnecessary to consider whether the work requirements would have barred veterans who had not

met them. On the facts before the Court, the decision fell within the principle that a returning serviceman must be treated as if he had kept his job continuously throughout the period of his military service.[7]

## III

Petitioner argues that under *Accardi* and *Eagar* the vacation benefits in this case must be granted to him as a returning serviceman because the entitlement to a vacation is not closely correlated to the amount of work actually performed by the employee. Under the collective-bargaining agreement, a Dravo employee theoretically could earn full vacation benefits by doing as little as one hour's work in each of 25 weeks during the year. From this, petitioner concludes that the agreement really conditions vacation benefits only on continued employment, and that Dravo therefore could not legally deny him full vacation benefits for either 1967 or 1968.

This approach would extend the statute well beyond the limits set out in our prior cases. Generally, the presence of a work requirement is strong evidence that the benefit in question was intended as a form of compensation. Of course, as in the *Accardi* case, the work requirement may be so insubstantial that it appears plainly designed to measure time on the payroll rather than hours on the job; in that event, the Act requires that the benefit be granted to returning veterans. But where the work requirement constitutes a bona fide effort to compensate for work actually performed, the fact that it correlates

---

[7] The dissenters in *Eagar* v. *Magma Copper Co.* argued that the statute's protection applied only to rights associated with seniority. 389 U. S. 323, 325 (1967) (DOUGLAS, J., joined by Harlan and STEWART, JJ., dissenting). They would have distinguished between eligibility based upon being on the payroll on a particular date or for a particular period from eligibility based upon length of service with the company. The majority implicitly rejected this distinction.

only loosely with the benefit is not enough to invoke the statutory guarantee.

We agree with the Court of Appeals that, unlike the severance payments in *Accardi,* the vacation benefits in this case were intended as a form of short-term compensation for work performed. Although Dravo employees who work for 25 weeks receive the same paid vacation rights as those who work a full year, the collective-bargaining agreement provides additional vacation credit for employees who work overtime for a substantial period. The benefits under the overtime vacation provision increase with the amount of overtime worked. In addition, the agreement provides that if an employee is laid off during the year and does not work the requisite 25 weeks, he will be awarded vacation benefits on a pro rata basis.

These provisions lend substantial support to respondent's claim that the vacation scheme was intended as a form of deferred compensation. Petitioner's observation that an employee could in theory earn a vacation under the collective-bargaining agreement with only a few carefully spaced hours of work is not enough to rebut the plain indication that a full vacation was intended in most cases to be awarded for a full year's work.[8]

On petitioner's theory of the case, the company would be required to provide full vacation benefits to a returning serviceman if he worked no more than one week in

---

[8] Petitioner's reliance on the treatment of the work requirement in *Accardi* is misplaced. The Court there concluded that the severance payments were based primarily on the employees' length of service with the railroad, not on the actual total service rendered. The putative "work requirement" in that case, the Court concluded, did not disguise the true nature of the payments as compensation for the loss of jobs. The *Eagar* case provides even less support for petitioner since that case did not involve an unsatisfied work requirement.

each year; indeed, following this approach to its logical limits, a veteran who served in the Armed Forces for four years would be entitled to accumulated vacation benefits for all four years upon his return. This result is so sharply inconsistent with the common conception of a vacation as a reward for and respite from a lengthy period of labor that the statute should be applied only where it clearly appears that vacations were intended to accrue automatically as a function of continued association with the company. Since no such showing was made here, and since petitioner has not met the bona fide work requirement in the collective-bargaining agreement, we conclude that § 9 did not guarantee him full vacation rights for the two years in question.[9]

## IV

In the alternative, petitioner asserts that the statute entitles him at least to pro rata vacation benefits for the time he served Dravo during 1967 and 1968. If he is denied even a pro rata share of vacation benefits, petitioner claims he will in effect be penalized for taking a military leave of absence, a result that the Act was expressly intended to prevent.

We can find nothing in the statute, independent of the rights conferred in the collective-bargaining agreement, that would justify such a Solomonic solution. The

---

[9] In contrast to the conditions of eligibility for a vacation are the terms governing the length of the vacation to which an employee is entitled. As noted above, the length of vacation increases with the employee's length of "continuous employment" with Dravo, which is defined in the collective-bargaining agreement as "continuous seniority." Art. XIV, §§ 1, 2. Respondent concedes that the employee's time in the service must be counted in determining the length of the vacation that is earned; for the years in which petitioner has worked the 25 weeks required to earn a vacation, the length of his vacation has been calculated as if he had been continuously employed with the company since 1965.

statute requires that a returning veteran be treated the same as an employee "on furlough or leave of absence," 50 U. S. C. App. § 459 (c)(1), but petitioner's suggestion would grant pro rata vacation rights to veterans regardless of whether any other class of employees would be similarly treated.

Although we reject petitioner's statutory theory, the potential availability of pro rata vacation rights enters the case in a somewhat different way. The collective-bargaining agreement provides pro rata vacation rights to those employees who were unable to accumulate the minimum of 25 weeks of employment because of layoffs. Art. XIV, § 2. In light of this provision, the Court of Appeals noted that petitioner might have a claim for pro rata benefits under the agreement. It therefore remanded the case to the District Court to determine whether petitioner had adequately preserved that point before the District Court and, if so, whether he was entitled to some vacation benefits.[10]

We agree with the Court of Appeals that because it was not litigated at the trial level, this question should be remanded to the District Court for further proceedings. Accordingly, we affirm the judgment of the Court of Appeals.

*Affirmed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

---

[10] Even if petitioner is not eligible for vacation benefits as a purely contractual matter, he may be entitled to pro rata benefits under the "other benefits" provision of § 9 (c)(1) of the Act, read in conjunction with the collective-bargaining agreement. Since the statute requires that vacation benefits be granted to returning veterans on the same basis as they are to those on furlough or leave of absence, petitioner would be entitled to pro rata benefits if the layoff referred to in the collective-bargaining agreement includes a furlough or leave of absence, or is found to be the equivalent of either.