James E. JACKSON and M. S. Tolbert,
Plaintiffs-Appellants,

v.

BEECH AIRCRAFT CORPORATION,
Defendant-Appellee.

No. 74–1695.

United States Court of Appeals,
Tenth Circuit.

June 18, 1975.

Carla A. Hills, Asst. Atty. Gen., Irving Jaffe, Acting Asst. Atty. Gen., Robert J. Roth, U. S. Atty., and Robert E. Kopp and Larry R. O'Neal, Attys., Dept. of Justice, for plaintiffs-appellants.

Wayne W. Wallace, Paul B. Swartz, J. Taylor Neuschwander, and Martin, Pringle, Schell & Fair, Wichita, Kan., for defendant-appellee.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

This appeal concerns the reemployment rights of veterans. James E. Jackson and M. S. Tolbert, veterans, brought an action against their employer, Beech Aircraft Corporation, under the provisions of the Military Selective Service Act. 50 U.S.C.App. § 451 et seq. They claimed that time spent in military service should be counted for purposes of computing retirement income benefits, eligibility for longevity pay, length of vacations, and the rate of accrual of sick leave credits. The case was submitted on the basis of stipulated facts, and the trial court denied relief on the ground that each of the four benefits claimed was not a "seniority right" within the meaning of 50 U.S.C.App. § 459. Jackson and Tolbert now appeal.

Jackson was hired by Beech Aircraft on December 26, 1963, and he continued in this employment until July 30, 1965, when he left Beech to enter active duty in the armed forces. Jackson was later honorably discharged on July 27, 1967, and was reemployed by Beech on August 21, 1967.

Tolbert was hired by Beech on August 13, 1963, and he continued in his employment until March 21, 1966, when he entered upon military duty. On March 22, 1968, Tolbert was honorably discharged and he was reemployed by Beech on March 24, 1968.

It is agreed that Beech reemployed both Jackson and Tolbert with at least certain rights of seniority. However, Beech did not allow time spent in the military to be used in computing retirement income benefits, longevity pay, length of vacations, and sick leave credits. The ultimate issue is whether these particular benefits are "seniority rights" under the Selective Service Act. Let us look at each of the four benefits involved in this proceeding.

Retirement income benefits are provided for in Beech's Retirement Income Plan for Hourly Paid Employees. When this action was commenced on December 30, 1970, the Retirement Income Plan for Hourly Paid Employees, as amended October 1, 1969, was in effect. The principal concept under the 1969 Plan was "credited service." The 1969 Plan provided that "credited service" included time spent in the military for the purpose of determining an employee's eligibility for retirement benefits, and for the additional purpose of determining when his interest therein vested. However, the 1969 Plan specifically excluded time spent in the military in the computation of the amount of such retirement benefits. Under the 1969 Plan the amount of retirement benefits was tied to "years of service."

The 1969 Plan was amended on July 31, 1972, during the course of the instant proceeding, and under the 1972 amendment time spent in the military was not to be counted for determining either eligibility, vesting, or the amount of retirement benefits. Under the 1972 amendments "credited service" means "active employment" and the latter term is defined as "actual work."

Longevity pay is provided for in the collective bargaining agreement between Beech and the International Association of Machinists and Aerospace Workers. The agreement provides that upon completing five years of "work time" an employee will receive an hourly premium of 5¢ per hour, and upon completion of ten years of "work time" he will receive an additional 5¢ per hour. The agreement further provides that "work time" will be broken by all leaves of absence and layoffs exceeding thirty days. Military leaves of absence for more than thirty days are treated in the same manner as

other leaves of more than thirty days. Accordingly, military time, if for more than thirty days, is excluded in determining eligibility for longevity pay.

Under the collective bargaining agreement, a Beech employee is allowed a paid vacation each year, the length of the vacation depending on the amount of "work time" served with Beech. "Work time," as such relates to vacations, is defined in the same manner, as is "work time" in connection with longevity pay, i. e., any leave of absence of more than thirty days, which includes a leave of absence occasioned by military service, does not count towards the accumulation of "work time."

Under the collective bargaining agreement a Beech employee accrues a certain number of hours of sick leave credits per month, based on "completed years of work time." Again, under the bargaining agreement "work time" is so defined as to exclude any leave of absence exceeding thirty days, which excludes time spent in the military, if such be for more than thirty days, in computing sick leave credits.

Disposition of the present controversy is governed by the Military Selective Service Act, with two sections of the Act having particular applicability. 50 U.S. C.App. § 459(b), in pertinent part, reads as follows:

"b) Reemployment rights

"In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

"(A) * * *.

"(B) if such position was in the employ of a private employer, *such person shall—*

"(i) if still qualified to perform the duties of such position, *be restored* by such employer or his successor in interest *to such position or to a position of like seniority, status, and pay*; * * ." (Emphasis added.)

50 U.S.C.App. § 459(c) provides as follows:

"(c) Service considered as furlough or leave of absence

"(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, *shall be so restored without loss of seniority,* shall be entitled to participate in insurance *or other benefits* offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner *as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.*" (Emphasis added.)

The issue here to be resolved is whether the particular benefits with which we are here concerned, i. e., retirement income benefits, eligibility for longevity pay, length of paid vacations, and sick leave credits, are traditional perquisites of seniority. If they are, then under the Selective Service Act Jackson and Tolbert should have been granted relief. The trial court, however, found that the

benefits here in issue were not seniority rights within the meaning of the Act and, on the contrary, represented only the "other benefits" referred to in 50 U.S.C.App. § 459(c)(1). According to that section of the statute, these "other benefits" are governed by "established rules and practices relating to employees on furlough or leave of absence * * *." We agree with the trial court's analysis of the matter.

■ The underlying purpose of the Military Selective Service Act is to make certain that the veteran does not lose seniority rights because of time spent in military service. The Act purports to guarantee that his seniority rights will be preserved by first mandating that on his return he be restored to the position he left, or to a position of like seniority, status and pay. 50 U.S.C.App. § 459(b). It is apparently agreed that Beech complied with this provision of the Act.

■ The Act additionally provides that a veteran thus restored to his position "shall be so restored without loss of seniority." 50 U.S.C.App. § 459(c)(1). The Act does not itself define the term "seniority." In such circumstance the term "seniority" has been held to derive its content from "private employment practice and agreements." This does not mean, however, that the Act may be eroded by an employer's practices, or by collective bargaining agreements entered into by the employer and the union. Transparent labels and definitions in collective bargaining agreements, for example, cannot deprive a veteran of his rights under the Act. In support of the foregoing, see Accardi v. Pennsylvania Railroad Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966).

As indicated, the instant case was presented to the trial court on the basis of stipulated facts. Except for the retirement plan and the collective bargaining agreement, we find nothing in the stipulation which sheds any light on the question of whether retirement income benefits, eligibility for longevity pay, length of vacation time and sick leave credits are, or have been, traditional forms of seniority. In such circumstance, then, we are of necessity limited to an examination of the agreements from which the benefits arise in our effort to ascertain their true nature. In this regard there is little doubt but that the benefits here involved are in each instance tied to actual work time, and not mere length of service. The amount of retirement income benefits under the 1969 Plan, as amended, is to be computed on the basis of years of actual work. Longevity pay, length of vacation, and sick leave credits are geared in each instance to "work time." On this state of the record we agree with the trial court that the benefits here involved are not a part of seniority, but constitute "other benefits" to be governed by Beech's retirement plan and its collective bargaining agreement with the union.

■ The reemployment rights of the returning veteran have been the subject of much litigation and the results thereof have been far from uniform. The basic design of the Act was to make certain that "he who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job." Fishgold v. Sullivan Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). Under the Act a returning veteran is entitled to be restored not to a position which would be the precise equivalent of that which he left, but rather to a position which on the "moving escalator" of terms and conditions affecting his particular employment would be comparable to the position that he would have held if he had remained continuously in civilian employment. Tilton v. Missouri Pacific R.R. Co., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964), and Oakley v. Louisville & N. R. Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87 (1949). Or, as was stated in McKinney v. Missouri-Kansas-Texas Railroad Co., 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958), the important but limited purpose of the Act "is to assure that those changes and advancements in status that would necessarily have oc-

curred simply by virtue of continued employment will not be denied the veteran because of his absence in the military service."

■ There is little difficulty in the teaching of these cases. The difficulty arises in applying the general principles enunciated therein to the facts of a given case, particularly when the case at hand does not involve such traditional seniority rights as layoff, recall, and promotion. A recent case involving pension rights is Litwicki v. Pittsburgh Plate Glass Ind., Inc., 505 F.2d 189 (3d Cir. 1974). There, the Third Circuit noted that pension benefits have traditionally been regarded as deferred wages, "an integral element of the entire wage structure," and that court went on to hold that retirement benefits under a pension agreement were not the perquisites of seniority under the Act, but represented "deferred compensation based upon a substantial work requirement." In the instant case we, too, are of the view that the retirement income benefits provided by the plan are not a form of seniority, as such, but are based on a substantial work requirement. Accordingly, we hold that the Act does not require that Jackson and Tolbert be given credit for time spent in the military in computing the amount of their retirement benefits.

■ Eligibility for longevity pay, length of vacation, and sick leave credit are of the same general nature, and none of these three in our view constitutes a seniority right protected by the Act. In support of such conclusion, see, for example, Foster v. Dravo Corp., 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975), affirming Foster v. Dravo Corp., 490 F.2d 55 (3d Cir. 1973). There, eligibility for vacation was dependent on a work requirement which the veteran had not met because of military service. The Third Circuit held that full vacation rights, which under a collective bargaining agreement were tied to a work requirement, were not a reward for mere length of service, and hence a form of seniority, but represented additional and

deferred compensation for work performed. In affirming, the Supreme Court recognized that the general purpose of the Act was to assure the veteran those benefits and advancements which would necessarily have accrued merely by virtue of continued employment, and that the Act did not protect a claimed benefit "requiring more than continued status as an employee." In this latter connection the Supreme Court noted that "generally, the presence of a work requirement is strong evidence that the benefit in question was intended as a form of compensation." In the instant case, longevity pay, vacation, and sick leave credits are all tied into a work requirement, and hence in our review none constitutes a seniority right protected by the Act. See also Austin v. Sears, Roebuck and Co., 504 F.2d 1033 (9th Cir. 1974), a case involving vacation benefits, and Brown v. Denver Post, 145 F.Supp. 351 (D.Colo. 1956), involving step rate increases which were dependent on "years of employment."

A Tenth Circuit case having bearing on our problem is Kasmeier v. Chicago, Rock Island and Pacific R.R. Co., 437 F.2d 151 (10th Cir. 1971). There, the collective bargaining agreement provided that for an employee to be entitled to vacation benefits he must have rendered 110 days of compensated service in the preceding year. The serviceman there had been in military service for much of the calendar year of 1967, to the end that he had only rendered 53 days of "compensated service" in 1967. It was his contention, however, that he should have been treated as having rendered "compensated service" for the entire year of 1967, notwithstanding his absence for much of the year in military service. In rejecting this argument, we observed that the Act does not preclude provisions in collective bargaining agreements which impose legitimate, uniformly applied compensated work day requirements as conditions precedent to vacation benefits and we held that the vacation rights there involved did not constitute a perquisite of "seniority," as that term is used in the Act.

Counsel would distinguish *Kasmeier* on the ground that it concerns *entitlement* to vacation, and we are here concerned with the *length* of vacation. We do not deem this to be a distinction of any real significance. If the right to any vacation may with propriety be geared to a work requirement, it would seem to us to follow that the length of the vacation may also be tied to an actual work requirement. And in our view the reasoning of *Kasmeier* permits eligibility for longevity pay and sick leave credits to also be computed on the basis of actual work, rather than mere continuity of employment.

In this court much reliance is placed on Eagar v. Magma Copper Co., 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967), *reversing,* Magma Copper Co. v. Eagar, 380 F.2d 318 (9th Cir. 1967), and Accardi v. Pennsylvania R.R., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966). In our Kasmeier v. Chicago, Rock Island and Pacific R.R., 437 F.2d 151 (10th Cir. 1971), we fully distinguished *Accardi* and *Eagar* from a case involving vacation rights based on actual work time. We rely here on this distinction as thus elucidated in *Kasmeier.*

■ Brief reference should be made to the "bizarre result" doctrine, which is asserted here as an alternate theory upon which Jackson and Tolbert should prevail. In *Accardi,* severance pay was computed on the basis of years of "compensated service." In looking behind the severance pay provisions and in holding that the severance pay there involved was in reality a seniority right based merely on continuous service, the Supreme Court noted that under other provisions of the severance pay agreement an employee could get credit for an entire year's compensated service by only working seven days per year. This was so because the severance pay provisions ·defined a month of "compensated service" as any month in which the employee worked one or more days, and further provided that "a year of compensated service is 12 such months or major portion thereof." The "bizarre result" in *Accardi* was the fact that an employee could, in theory, at least, get credit for a year of compensated service by only working a total of seven days per year. It is doubtful that the bizarre result concept was the true basis for the holding in *Accardi.* In any event, in our view the bizarre result doctrine has been cut back in the recent case of Foster v. Dravo Corp., 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975). In the latter case the Supreme Court, in considering the bizarre result concept, stated that "where the work requirement constitutes a bona fide effort to compensate for work actually performed, the fact that it correlates only loosely with the benefit is not enough to invoke the statutory guarantee."

The "bizarre result" which is said to be inherent in the instant case arises from the fact that under the stipulation it is agreed that an employee of Beech could get credit for a full month's actual work by only working one day, and then going on a leave of absence, which could be up to 30 days. The stipulation also concedes that employees have been permitted more than one 30-day leave of absence in a given year. From this concession counsel for Jackson and Tolbert theorize that an employee could work one day, take a 30-day leave of absence, then work another day, take another 30-day leave of absence, and keep repeating the process for an entire year, thereby getting credit for a year's work, but only actually working 12 days. We do not believe that the concession by Beech that an employee could get more than one 30-day leave of absence in a year carries with it the concession that he could get 12 such leaves of absence in a particular calendar year. We agree with counsel that it is highly improbable that Beech would allow such an abuse of the leave of absence provision. In any event, in our view Foster v. Dravo Corp., 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975), precludes such theorization from carrying the day.

Judgment affirmed.