Donald LANG; Kenneth Beck; Michael Erickson, Plaintiffs–Appellees, Cross–Appellants,

v.

**GREAT FALLS SCHOOL DISTRICT NO. 1 AND A, Defendant–Appellant, Cross–Appellee.**

Nos. 87–3727, 87–3757.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1988.

Decided March 2, 1988.

Before WRIGHT, ALARCON and POOLE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This case involves re-employed veterans' statutory right to employment benefits.

Lang, Beck, and Erickson taught for the Great Falls School District until the summer of 1970 when they resigned to serve in the armed forces. The District's teachers were employed under individual teaching contracts, and their compensation was determined according to a salary schedule. The schedule consisted of incremental steps with teachers' pay usually increasing at each succeeding step.[1] Teachers advanced one step for each year of teaching experience (135 days of teaching).

After their military service, the veterans were rehired by the District; Lang in September 1973, Erickson in June 1972, and Beck in August 1970. The time spent in the military was not considered as experience for purposes of restoring them to the salary schedule. Their rate of pay upon reemployment, therefore, was less than if they had not served in the military.

In 1977, Lang filed a grievance with the District regarding seniority because of his military experience. It did not mention advanced placement on the salary schedule.

Five years later, the teachers' union asked the District about advanced placement on the schedule for military time. The District replied that military time counted for seniority but not for salary placement unless on an approved leave of absence. For the next several years, the veterans and their union contacted state and federal agencies to determine their rights.

In February 1985, the veterans sued the District. They alleged that the District violated the Veterans' Reemployment Rights Act by not considering time spent in military service for purposes of computing

Leslie S. Waite, III, Waite, Schuster & Larson, P.C., Great Falls, Mont., for defendant-appellant, cross-appellee.

Howard F. Strause, Strause & Anderson, Great Falls, Mont., for plaintiffs-appellees, cross-appellants.

1. Collective bargaining agreements (CBA), first entered into in 1974, contain essentially the same salary schedule scheme, including provisions for advancement and advanced placement.

their position on the salary schedule. The district court granted the veterans' summary judgment motion in part, subject to trial on the issues of laches and waiver/settlement. The court entered final judgment after ruling that the veterans' claims were not barred by the District's defenses. It concluded, however, that the delay in filing the action precluded an award of prejudgment interest.

The District appeals, alleging several errors: the court erred in ruling that advancement on the salary schedule is a perquisite of seniority; the court erred by concluding that the veterans' claims are not barred by laches or waiver/settlement; the court erred by refusing to admit certain evidence; and summary judgment was improper because the District disputes that Beck left his position to join the military. The veterans cross-appeal alleging that the court erred by denying them prejudgment interest. We affirm.

## DISCUSSION

### I. *Placement on the Salary Schedule*

Veterans' claims are governed by the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021(b)(1) (1982). It provides that a veteran who is reemployed after satisfactory completion of military duty "shall be so restored or reemployed without loss of seniority." *Id.* The district court concluded that advancement on the salary schedule is a perquisite of seniority because it rewards longevity. It ruled that the Act requires the District to credit the veterans with their military time in computing their pay.

Summary judgment is reviewed de novo to determine that the movant is entitled to judgment as a matter of law, and that no issues of material fact exist when viewing the evidence most favorable to the adverse party. *David v. United States*, 820 F.2d 1038, 1039–40 (9th Cir.1987). The court's interpretation of federal law is reviewed de novo. *Mada–Luna v. Fitzpatrick*, 813 F.2d 1006, 1011 (9th Cir.1987).

The Act is to be liberally construed for the benefit of returning veterans. *Coffy v.*

*Republic Steel Corp.*, 447 U.S. 191, 196, 100 S.Ct. 2100, 2104, 65 L.Ed.2d 53 (1980). Under the Act, the returning veteran should step back onto the seniority escalator at the "precise point he would have occupied had he kept his position continuously during the war." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284–85, 66 S.Ct. 1105, 1110–11, 90 L.Ed. 1230 (1946).

■ The veterans argue that advancement on the salary schedule is a right of seniority guaranteed by the Act. Benefits which would have continued to accrue to veterans had they remained in private employment are protected by the Act and must be restored upon their return from service. *Accardi v. Pennsylvania R. Co.*, 383 U.S. 225, 229–30, 86 S.Ct. 768, 771–72, 15 L.Ed.2d 717 (1966). A two-pronged analysis is used to determine whether a benefit is secured by the Act:

> If a benefit would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer, and *if it is in the nature of a reward for length of service, it is a 'perquisite of seniority.'* If, on the other hand, the veterans' right to the benefit at the time he entered the military was subject to a significant contingency, or *if the benefit is in the nature of short-term compensation for services rendered, it is not an aspect of seniority within the coverage of Section 9.*

*Alabama Power Co. v. Davis*, 431 U.S. 581, 589, 97 S.Ct. 2002, 2007, 52 L.Ed.2d 595 (1977) (emphasis added).

The District does not dispute the court's finding that these veterans would have advanced on the schedule with reasonable certainty. Thus, the first prong of the *Alabama Power* test does not bar the veterans' claims.

Advancement on the salary schedule does not fit neatly into either category of the second prong. Nevertheless, we must determine whether the nature of advancement is a reward for length of service or short-term compensation for services rendered. We have not addressed the question previously, and there is no clear

weight of authority.[2] In considering the nature of advancement here, we are guided by several Supreme Court decisions that have considered the nature of other benefits.[3] *See Accardi v. Pennsylvania R. Co.,* 383 U.S. 225, 230, 86 S.Ct. 768, 771, 15 L.Ed.2d 717 (1966) (severance pay a perquisite); *Foster v. Dravo Corp.,* 420 U.S. 92, 101, 95 S.Ct. 879, 884, 43 L.Ed.2d 44 (1975) (vacation benefits *not* a perquisite); *Alabama Power Co. v. Davis,* 431 U.S. 581, 594, 97 S.Ct. 2002, 2009, 52 L.Ed.2d 595 (1977) (pension fund payments a perquisite); *Coffy v. Republic Steel Corp.,* 447 U.S. 191, 206, 100 S.Ct. 2100, 2109, 65 L.Ed. 2d 53 (1980) (supplemental unemployment benefits provided pursuant to a CBA are perquisites); *see also Austin v. Sears, Roebuck & Co.,* 504 F.2d 1033 (9th Cir.1974) (vacation benefits).

Although specific provisions of the District's compensation plan have varied over the years, its basic scheme has remained constant. Pay increases are based upon the teachers' vertical or horizontal advancement on the salary schedule. They may advance vertically by meeting the minimum school year requirement, and horizontally by completing additional professional training. Once teachers reach maximum vertical advancement, they are entitled to additional "career increment" compensation based upon total years of teaching experience in the District. New teachers are placed on the schedule on the basis of prior experience.

The District's compensation scheme is not unlike the basic plan used by many employers, whereby automatic annual service increases are augmented with merit increases. Annual service increases, no doubt, manifest employers' recognition that job experience often produces a more valuable employee, and that value should be rewarded. Employers may also recognize that annual increases are necessary to keep pace with the cost of living, and to satisfy employees' expectation of regular pay increases.

We believe, however, that the predominant nature of annual service increases is to provide employees with a reward for continued future service. For a host of reasons, stability in its workforce is a valuable asset to employers. Annual service increases are an incentive for employees' continued future service. They are the only economic tool an employer has to make long-term employment attractive. Thus, we classify annual service increases as perquisites of seniority.

Vertical advancement on the District's salary schedule, despite its labels, cannot be distinguished meaningfully from run-of-the-mill annual service increases.[4] Teachers are eligible to advance on the schedule by working merely for "one school year,"

2. Some courts have treated pay increases as a perquisite of seniority. *See United States ex rel. Adams v. General Motors Corp.,* 525 F.2d 161 (6th Cir.1975); *Hatton v. Tabard Press Corp.,* 406 F.2d 593 (2d Cir.1969); *Borges v. Art Steel Co.,* 246 F.2d 735 (2d Cir.1957); *Moe v. Eastern Air Lines, Inc.,* 246 F.2d 215 (5th Cir.1957), *cert. denied,* 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550 (1958); *Spearmon v. Thompson,* 167 F.2d 626 (8th Cir.), *cert. denied,* 335 U.S. 822, 69 S.Ct. 44, 93 L.Ed. 376 (1948); *Adams v. Indiana,* 113 LRRM 3021 (S.D.Ind.1983) [Available on WESTLAW, 1983 WL 1992]; *Beckley v. Lipe-Rollway Corp.,* 448 F.Supp. 563 (N.D.N.Y.1978); *Greiling v. Rockford Newspapers, Inc.,* 95 LRRM 2658 (N.D.Ill.1977) [Available on WESTLAW, 1977 WL 1668]; *Nichols v. Kansas City Power & Light Co.,* 391 F.Supp. 833 (W.D.Mo.1975); *Alfarone v. Fairchild Stratos Corp.,* 218 F.Supp. 446 (E.D.N.Y.1963).

Others have not. *See Jackson v. Beech Aircraft Corp.,* 517 F.2d 1322 (10th Cir.1975); *Altgens v. Associated Press,* 188 F.2d 727 (5th Cir. 1951); *Nevin v. Curtis-Wright Corp.,* 172 F.2d 535 (6th Cir.1949); *Harvey v. Braniff Int'l Airways,* 164 F.2d 521 (5th Cir.1947); *Brown v. Denver Post,* 145 F.Supp. 351 (D.Colo.1956); *Selgrat v. Field Enters.,* 105 F.Supp. 179 (N.D.Ill. 1952); *Huffman v. Norfolk & Western Ry. Co.,* 71 F.Supp. 564 (W.D.Va.1947).

3. The reemployment provisions of section 2021 date to the Selective Training and Service Act of 1940, Pub.L. No. 76–783, 54 Stat. 885. *Trulson v. Trane Co.,* 738 F.2d 770, 773 n. 4 (7th Cir. 1984). Although the statutory provisions have varied somewhat over the years, they are sufficiently similar that cases decided under the prior statute are authoritative here. *See Coffy,* 447 U.S. at 194 n. 2, 100 S.Ct. at 2103 n. 2; *Trulson,* 738 F.2d at 773 n. 4.

4. The District's compensation plan does not have a "merit" component; however, teachers receive extra compensation for additional professional preparation.

completing 135 days of teaching. Once they meet the 135–day requirement, teachers advance on the schedule without discretion by the District. They are entitled to advancement regardless of their performance or whether they benefit from the previous year's experience. At the top of the schedule, their pay continues to advance annually on the "career increment" schedule.

Like annual service increases, we conclude that the predominant nature of advancement on the salary schedule is to reward for longevity. It is, therefore, a perquisite of seniority and secured by the Act. *See Alabama Power*, 431 U.S. at 594, 97 S.Ct. at 2009.

We are not persuaded by the District's argument that vertical advancement is not a perquisite because it is intended to compensate teachers for the valuable experience they gain by teaching 135 days annually. Courts are not to "place undue emphasis on the parties' imprecise 'labels and definitions' to define 'rights guaranteed by the Act.'" *Smith v. Industrial Employers and Distributors Association*, 546 F.2d 314, 317 (9th Cir.1976). Regardless of vocation, continuous employment with one employer will often produce experienced employees who may deserve greater compensation. Like most annual service increases, we assume that the District's plan has a compensational motive. This, however, is not sufficient to change the predominant nature of vertical advancement.

The District argues that the 135–day work requirement compels a conclusion that advancement is a form of deferred compensation. It relies on a statement of the Supreme Court: "Generally, the presence of a work requirement is strong evidence that the benefit in question was intended as a form of compensation." *Foster v. Dravo Corp.*, 420 U.S. 92, 99, 95 S.Ct. 879, 884, 43 L.Ed.2d 44 (1975); *see also Austin v. Sears, Roebuck & Co.*, 504 F.2d 1033 (9th Cir.1974).

*Foster* and *Austin*, however, do not control here. Those cases, which held that vacations are deferred compensation, turned on the unique nature of vacation as a "part of a worker's short term return for labor." *See Alabama Power*, 431 U.S. at 592, 97 S.Ct. at 2008. Although the work requirement here may be evidence that advancement is intended to compensate for experience, other factors persuade us that the 135–day requirement is primarily an administrative tool to mark the passage of a "school year".

The District has not required that all teachers reach the 135–day experience level for vertical advancement. Teachers with excess accumulated sick leave could be credited with a year of experience although they did not work the full 135 days. Teachers who served in the Montana legislature could advance vertically provided they taught for 100 days. In some years, teachers did not receive increased compensation for their first three years of experience. Teachers with 134 or fewer days of teaching experience receive no compensation, and teachers with substantially more experience do not receive a proportionately greater amount. The District's explanation that "budgetary" considerations compel these variations does not change the nature of advancement. The nature of the benefit, not the formula for calculation, is the crucial test for a perquisite of seniority. *Coffy*, 447 U.S. at 203, 100 S.Ct. at 2108.

Finally, the District points to its policies and CBA provisions that distinguish between seniority and teaching experience to show that the parties intent and practice was to compensate teachers for their teaching experience. We reject this argument. Employment practices or agreements between employers and unions cannot reduce the benefits which Congress has secured for veterans. *Fishgold*, 328 U.S. at 285, 66 S.Ct. at 1111.

The District's argument that summary judgment was not proper because material facts are in dispute regarding the intent, nature and purpose of salary benefits is without merit. Even if these issues were in dispute, they are not necessary here to

determine the nature of salary schedule advancement. We conclude that advancement on the basis of experience is a perquisite of seniority, and falls within the ambit of the Act.

## II. *The District's Defenses*

■ The district court ruled that laches did not bar the Veterans' claims.[5] Whether to apply laches is left to a court's discretion and is reviewed for an abuse of discretion. *See Coalition for Canyon Preservation v. Bowers*, 632 F.2d 774, 779 (9th Cir.1980).

The doctrine of laches requires the defendant to establish that it has (1) been prejudiced by (2) inexcusable neglect of the plaintiff. *Barona Group of Captain Grande Band of Mission Indians v. American Management & Amusement, Inc.*, 824 F.2d 710, 723 (9th Cir.1987).

The District argues that the veterans' inexcusable neglect caused it to be prejudiced by loss of evidence, fading recollection of some witnesses, and lack of budgeted funds to pay the claims. The district court concluded that the District failed to show sufficient prejudice because of inexcusable neglect. We find no basis in the record for disturbing that conclusion. The District has not established an abuse of the court's discretion in exercising its equitable powers.

The district court concluded also that the veterans' claims were not barred by waiver after finding a lack of documentary evidence indicating that they had waived their claims because of the 1977 grievance settlement. The factual findings required to invoke this defense are reviewed for clear error. *Cf. United States v. Doe*, 819 F.2d 206, 209 (9th Cir.1986) (waiver of *Miranda* rights). Nothing in the record establishes

that the court's finding was clearly erroneous.[6]

## III. *Prejudgment Interest*

The district court concluded that the veterans' delay in filing the action precluded them from recovering interest on the salary they should have been paid.

■ Veterans may have prejudgment interest when they are deprived of reemployment rights guaranteed by the Act. *See, e.g., Hembree v. Georgia Power Co.*, 637 F.2d 423, 429–30 (5th Cir.1981). An award of prejudgment interest is within a court's discretion, and is reviewed for an abuse of that discretion. *Vance v. American Hawaii Cruises, Inc.*, 789 F.2d 790, 794 (9th Cir.1986).

■ Congress has made clear that claims under the Act are to be governed by principles of equity. *See supra* note 5. Here there was a substantial delay in bringing these claims. Although the court concluded that they were not barred by laches, it was well within its discretion to conclude that prejudgment interest would be inequitable. The veterans argue that they have suffered economic harm because of the delay in receiving the pay due them. We are not persuaded that it is appropriate to remedy that harm when it could have been avoided by bringing the claims more timely. The court did not abuse its discretion.

## IV. *The District's Other Arguments*

The District raises two other arguments which we reject. It argues that the court erred by refusing "to admit evidence regarding the District's policies, CBAs, changes therein respecting salary credit

---

5. The Act provides: "No state statute of limitation shall apply to any proceeding under [the Act]." 38 U.S.C. § 2022 (1982). The legislative history accompanying the Act expressed the congressional intent that proceedings to enforce veterans' rights be governed by principles of equity. Congress determined that enforcement would be available more uniformly by making laches the applicable time-bar defense, rather than individual state statutes of limitation.

S.Rep. No. 93–907, 93d Cong., 2d Sess. 111–12, 1974 U.S.Code Cong. & Admin.News 6313; *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 379 (7th Cir.1987).

6. We need not address the District's estoppel argument because it was based upon the existence of a waiver.

and military service, the nature of the claimed benefits, and the loss of evidence and harm related thereto." The court ruled that the evidence was not relevant.

Evidentiary rulings are reviewed for abuse of discretion, and will not be reversed absent some prejudice. *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1342 (9th Cir.1987). In light of the documentary evidence on the record and the nature of the issues before the court, the District has not shown that it was prejudiced by the absence of the proffered evidence.

The District contends also that the court erred in finding that each veteran resigned his position in favor of active duty in the military. Findings of fact are reviewed for clear error. *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 318 (9th Cir.1987). The District's argument has no merit in light of the District's admissions in its pleadings and the record before us.

### CONCLUSION

Advancement on the salary schedule is a perquisite of seniority, and is secured by the Act. The court did not err by granting summary judgment, by concluding that the veterans' claims were not barred by the District's equitable defenses, or by refusing to admit some evidence. The court did not abuse its discretion in denying the veterans' request for prejudgment interest. The parties will bear their own costs on this appeal.

The judgment is AFFIRMED.