693 A.2d 159

IN THE MATTER OF THE ARBITRATION BETWEEN BOARD OF EDUCATION OF THE BUENA REGIONAL SCHOOL DISTRICT, PLAINTIFF–RESPONDENT, v. BUENA REGIONAL EDUCATION ASSOCIATION, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 26, 1997—Decided May 7, 1997.

416

Before Judges LONG, SKILLMAN and A.A. RODRÍGUEZ.

*Waltman, Reilly & Rogovoy,* attorneys for appellant (*Ned P. Rogovoy,* on the brief).

*Capizola, Fineman & Lapham,* attorneys for respondent (*Michael D. Capizola, Jeannine V. Cavagnaro* and *Barbara R. Lapham,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This appeal involves the interpretation of *N.J.S.A.* 18A:28-6.1, which provides that when a school district discontinues a school and enters into an agreement to send its students to another district, the receiving district must offer employment to the tenured teachers in the discontinued school and preserve their basic employment rights including "seniority."

On December 19, 1992, the Board of Education of the Borough of Newfield (Newfield Board) entered into an agreement with the Board of Education of the Buena Regional School District (Buena Board), effective July 1, 1993, to expand their previous send-receiving relationship, which had covered grades seven through twelve, to include grades K through six. Paragraph five of this agreement provided in pertinent part:

[A]ll Sending District's teaching staff members who have tenure as of June 30, 1993 will be employed by Receiving District as required by N.J.S.A. 18A:28-6.1. All such transferred teaching staff will receive compensation and benefits based on the Receiving District's contractual agreements effective July 1, 1993.

Pursuant to this agreement, ten tenured elementary school teachers formerly employed by the Newfield Board became employed by the Buena Board.

Thereafter, the Buena Board entered into a collective bargaining agreement with the Buena Regional Education Association (Buena Education Association) covering the period from July 1, 1993, to June 30, 1996. This agreement included a multi-step salary guide under which teachers were compensated in accordance with their years of service. The ten teachers who had transferred from the Newfield district were given full credit for their service in Newfield in determining their compensation under this salary guide.

The collective bargaining agreement also contained a "longevity" provision, which provided:

Employees shall receive an additional increment of $300.00 for 15 years, $600.00 for 20 years, $325.00 for 25 years, $325.00 for 30 years to be added to their salary at the completion of the fifteenth, twentieth, twenty-fifth and thirtieth years of service in the Buena Regional School District. During the 1994–95 and following

school years, the amounts shall be $300.00 for 15 years, $700.00 for 20 years, $325.00 for 25 years and $325.00 for 30 years.

Although the Buena Board recognized the transferred teachers' service in the Newfield district for other purposes, it decided that only service in the Buena district would be counted in determining eligibility for additional compensation under this provision. The Buena Board applied this decision not only to the ten elementary school teachers transferred to the Buena district in 1993 but also to two upper grade teachers transferred in 1973 who had previously received such longevity payments based in part on service in the Newfield district.

The Buena Education Association grieved this decision and ultimately the dispute was submitted to arbitration. The arbitrator sustained the grievance, ruling that the transferred teachers "service in the Newfield School District shall be deemed years of service in Buena for the purpose of longevity under ... the contract." The arbitrator's decision relied in part on *N.J.S.A.* 18A:28–6.1:

[S]eniority is one of the items embraced in [*N.J.S.A.* 18A:28–6.1], and if there is any synonym for seniority—one that will serve as well as any other—it's longevity, two virtually interchangeable words denoting service for one employer or in one particular place. Seen in that light, what [*N.J.S.A.* 18A:28–6.1] is saying is that for purposes of longevity, Newfield teachers are to be afforded the same rights as the Buena staff.

The arbitrator also noted that "there is a real albeit intangible custom in labor relations that in situations such as this where employees are adopted by one employer from another, they should not end up being treated as orphans in their new home." In addition, the arbitrator rejected the Buena Board's argument that the grievance should be denied because it was not commenced within the time allowed under the agreement, ruling that the Board's action constituted a "continuing violation" which could be challenged at any time.

The Buena Board filed this action seeking to vacate the arbitration award, and the Buena Education Association filed a counterclaim seeking confirmation. The trial court ruled in favor of the Board and vacated the arbitration award. The court concluded

that the arbitrator should not have considered *N.J.S.A.* 18A:28–6.1, because the interpretation of the education laws is within the exclusive province of the Commissioner and State Board of Education. The court also concluded that the collective negotiating agreement clearly indicated that a teacher's entitlement to what the Board characterizes as "longevity compensation" is determined solely by his or her service in the Buena district. Although the court vacated the arbitration award, it refused to extend this ruling to the two teachers who transferred from Newfield to the Buena district in 1973, holding that the Buena Board was barred by the principle of equitable estoppel from depriving those teachers of this additional compensation.

The Buena Education Association appeals from the judgment memorializing this decision. We reverse.

Preliminarily, we reject the trial court's conclusion that the arbitrator was precluded from considering *N.J.S.A.* 18A:28–6.1 because the Department of Education has exclusive authority to interpret and enforce any provision of the education laws. Although the Commissioner and State Board of Education have primary responsibility for the interpretation and administration of the State's education laws, *see Abbott v. Burke,* 100 *N.J.* 269, 300–01, 495 *A.*2d 376 (1985), an arbitrator appointed to resolve a labor dispute between a school board and its teachers' association cannot make an award which "has 'the effect of establishing a provision of a negotiated agreement inconsistent with state statutory policy.'" *Old Bridge Township Bd. of Educ. v. Old Bridge Educ. Ass'n,* 98 *N.J.* 523, 528, 489 *A.*2d 159 (1985) (quoting *Teaneck Bd. of Educ. v. Teaneck Teachers Ass'n,* 94 *N.J.* 9, 15, 462 *A.*2d 137 (1983)); *accord Scotch Plains–Fanwood Bd. of Educ. v. Scotch Plains–Fanwood Educ. Ass'n,* 139 *N.J.* 141, 150, 651 *A.*2d 1018 (1995). Consequently, the arbitrator correctly concluded that he had to consider whether *N.J.S.A.* 18A:28–6.1 requires the Buena Board to give full credit to the transferred teachers for

their years of service in Newfield in determining their levels of compensation.

*N.J.S.A.* 18A:28–6.1 provides in relevant part:

Whenever … any board of education in any school district … shall discontinue any high school, junior high school, elementary school or any one or more of the grades from kindergarten through grade 12 in the district and shall, by agreement with another board of education, send the pupils in such schools or grades to such other district, all teacher staff members who are assigned for a majority of their time in such school, grade or grades and who have tenure of office at the time such schools or grades are discontinued shall be employed by the board of education of such other district in the same or nearest equivalent position; … *Teaching staff members so employed in such other district shall have their rights to* tenure, *seniority,* pension and accumulated leave of absence, accorded under the laws of this state, *recognized and preserved by the board of education of that district.* (Emphasis added.)

█ The issue presented by this appeal is whether the transferred teachers' "seniority" rights preserved by *N.J.S.A.* 18A:28–6.1 include full credit for all years of their service in Newfield for the purpose of determining their levels of compensation. *N.J.S.A.* 18A:28–6.1 does not include a definition of "seniority rights," and there is no legislative history which illuminates the intent of this provision. Moreover, the education laws do not contain any general definition of "seniority," and the Department of Education's rules and regulations and administrative decisions do not address the subject. Therefore, it is appropriate to consider the interpretation of statutes preserving "seniority" rights in related contexts to determine the probable intent of *N.J.S.A.* 18A:28–6.1.

In *Accardi v. Pennsylvania R.R. Co.*, 383 *U.S.* 225, 86 *S.Ct.* 768, 15 *L.Ed.*2d 717 (1966), the Court held that under section eight of the Selective Training and Service Act of 1940, Act of Sept. 16, 1940, ch. 720, 54 Stat. 880 (expired March 31, 1947), which required a private employer to reinstate any former employee who is honorably discharged from military service "without loss of seniority," an employer was required to give full credit for years spent in military service in determining severance pay under a labor agreement which awarded such compensation based on "the length of 'compensated service.'" *Id.* at 228, 86 *S.Ct.* at 770, 15 *L.Ed.*2d at 720. The Court concluded that "seniority" should be

liberally construed to assure that returning servicemen received the same rights and benefits which would have accrued to them had they remained in private employment:

The term "seniority" is not to be limited by a narrow, technical definition but must be given a meaning that is consonant with the intention of Congress.... That intention was to preserve for the returning veterans the rights and benefits which would have automatically accrued to them had they remained in private employment rather than responding to the call of their country. ... The requirements of the 1940 Act are not satisfied by giving returning veterans seniority in some general abstract sense and then denying them the perquisites and benefits that flow from it. We think it clear that the amount of these allowances is just as much a perquisite of seniority as the more traditional benefits such as work preference and order of lay-off and recall.

[*Id.* at 229–30, 86 *S.Ct.* at 771–72, 15 *L.Ed.2d* at 721.]

Even more pertinent to this appeal, in *Lang v. Great Falls Sch. Dist. No. 1*, 842 *F.*2d 1046 (9th Cir.1988), the court construed the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 *U.S.C.A.* §§ 4301–4333 (formerly 38 *U.S.C.A.* §§ 2021–2027), which requires a veteran discharged after completion of satisfactory military service to be reemployed "without loss of seniority," to mandate the award of full credit for time spent in the military in determining teachers' compensation under a salary schedule which consisted of incremental steps for each year of teaching experience:

Pay increases are based upon the teachers' vertical or horizontal advancement on the salary schedule. They may advance vertically by meeting the minimum school year requirement, .... Once teachers reach maximum vertical advancement, they are entitled to additional "career increment" compensation based upon total years of teaching experience in the District.

. . . .

Vertical advancement on the District's salary schedule, despite its labels, cannot be distinguished meaningfully from run-of-the-mill annual service increases. ...

Like annual service increases, we conclude that the predominant nature of advancement on the salary schedule is to reward for longevity. It is, therefore, a perquisite of seniority and secured by the Act.

[*Id.* at 1049–50.]

Thus, it is clear from *Accardi* and *Lang* that a statutory guarantee of "seniority" rights is not necessarily limited to work preference, lay-off and reemployment rights but may extend to the determina-

tion of levels of compensation under a salary schedule which fixes salaries in accordance with the number of years of service.

We conclude that the term "seniority" as used in *N.J.S.A.* 18A:28–6.1 should be accorded the same liberal interpretation as in the military service cases. The evident intent of *N.J.S.A.* 18A:28–6.1 was to preserve the basic employment rights of the tenured teachers in a school district which discontinues one or more schools and enters into a sending-receiving relationship with another school district. This broad legislative intent is evidenced by the fact that *N.J.S.A.* 18A:28–6.1 preserves not only the seniority rights of teachers transferred pursuant to such an agreement but also their rights to pension, accumulated leaves of absence and tenure. The value of these basic employment rights would be significantly diminished if the receiving district could deny credit for the transferred teachers' years of service in the sending district in determining their compensation. In fact, the amount of compensation is probably the most basic term and condition of any employment relationship, and the number of years of prior credited service is one of the primary determinants of a teacher's compensation. Interestingly, the Buena Board recognized the transferred teachers' prior service in the Newfield district in determining their levels of compensation under the basic multi-step salary guide but refused to recognize that service in determining their additional compensation under the so-called "longevity" provision. However, there is no basis in *N.J.S.A.* 18A:28–6.1 or any other section of the education laws for denying a teacher additional compensation for additional years of service simply because a school board chooses to characterize this additional compensation as "longevity" pay. Therefore, we construe *N.J.S.A.* 18A:28–6.1 to require a school district which enters into a sending-receiving relationship with another district which has discontinued a school to treat the prior service of tenured teachers transferred pursuant to the agreement as if it had been performed in the receiving district for the purpose of determining those teachers' levels of compensation.

■ Finally, we reject the Buena Board's arguments that the arbitration award must be vacated because the Buena Education Association failed to file a grievance within the time allowed by the collective negotiating agreement and because the Association is equitably estopped from seeking additional compensation on behalf of the former Newfield teachers. The arbitrator had the responsibility to determine whether the grievance was filed in a timely manner, *see Commerce Bank, N.A. v. DiMaria Const.*, 300 *N.J.Super.* 9, 13–18, 692 *A.2d* 54 (App.Div.1997), and the Board has not shown any grounds for disturbing the arbitrator's determination that the grievance was timely because it was directed at a "continuing violation." The Buena Education Association had no authority to enter into a collective negotiating agreement which relinquished the transferred teachers' right guaranteed by *N.J.S.A.* 18A:28–6.1 to receive full credit for their prior service in the Newfield district. Consequently, even if the Buena Board could show that Buena Education Association had agreed to exclude the transferred teachers from the benefit of the longevity provision, there would be no basis for a finding of equitable estoppel.

Reversed.