Anthony E. LiPANI, Plaintiff,

v.

BOHACK CORPORATION, Defendant.

Robert LOESCH, Plaintiff,

v.

BOHACK CORPORATION, Defendant.

Nos. 73–C–740, 73–C–742.

United States District Court,
E. D. New York.

Dec. 21, 1973.

Robert A. Morse, U. S. Atty., E. D. New York, for plaintiffs; Harold J. Friedman, Asst. U. S. Atty., of counsel.

Battle, Fowler, Lidstone, Jaffin, Pierce & Kheel, New York City, for defendant; Richard Adelman, David Fleischer, New York City, of counsel.

BARTELS, District Judge.

This is a consolidated action instituted by two employees of the defendant, Bohack Corporation ("Bohack"), under the Universal Military Training and Service Act, 50 U.S.C. App. § 459 ("the Act"), to recover vacation benefits for the year they returned from military service to the employment of the defendant. Bohack claims that plaintiffs are not entitled to vacation pay because they did not satisfy the work requirement of the defendant's collective bargaining agreement for the year they returned and therefore did not earn the claimed benefits. The issue is whether or not vacation pay is a perquisite of "seniority" status as the term is used in the Act, despite any work provisions of the collective bargaining agreement. Since the facts are stipulated, each side has moved for summary judgment, and for the reasons stated below, we grant defendant's motion and deny plaintiffs' motion.

Plaintiffs are veterans, who left the employment of Bohack to enter the armed forces of the United States, and after completion of their military service, they were reinstated by Bohack to their former positions. LiPani was employed by Bohack as a warehouseman on May 6, 1969, until his entry into the military service on July 14, 1969 (2 months and 8 days). He was reemployed by Bohack on October 18, 1971, and by the end of the calendar year 1971, had worked for Bohack approximately 4 months and 20 days. In June, 1972, he was given his first 2-week paid vacation and full sick leave allowance. Loesch was employed by Bohack as a warehouseman on March 10, 1969, and worked until July 31, 1969 (4 months and 20 days) when he left for military service. He was reemployed on October 18, 1971, and at the end of the

calendar year 1971, had worked approximately 7 months and 2 days. In December, 1971, Loesch received his first week of paid vacation, and in June, 1972, received a 2-week paid vacation plus full sick leave allowance.

Bohack credited both plaintiffs with time spent in the service for purposes of computing seniority, for though neither plaintiff had been employed for six months before induction, upon reemployment after discharge both were determined to have seniority in excess of two years. At the end of 1971, Loesch had actually worked for Bohack in excess of six months, and since employees with two years seniority who work six months are entitled to one week's paid vacation, Loesch was given this benefit. However, LiPani had not worked for six months, and was determined not to have earned a vacation for 1971. Loesch now sues for additional vacation pay of one week and sick leave allowance for the year 1971, and LiPani sues for a full two weeks vacation pay and sick leave allowance for 1971.

The relevant portions of Section 459 of the Act read as follows:

"(b) *Reemployment rights*

In the case of any such person who, in order to perform such training and service, has left or leaves a position * * * in the employ of any employer and * * * makes application for reemployment within ninety days after he is relieved from such training and service * * * —

    *     *     *     *     *     *

(B) if such position was in the employ of a private employer, such person shall—

(i) * * * be restored by such employer * * * to such position or to a position of like seniority, status, and pay;

    *     *     *     *     *     *

(c)(1) Any person who is restored to a position in accordance with the provisions of paragraph * * * (B) of subsection (b) * * * shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph * * * (B) of subsection (b) * * * should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

The pertinent portions of the collective bargaining agreement[1] concerning

---

1. Article X reads in part as follows:
"(A) All full time employees in the employ of the Company for a period of six (6) months of continuous working service shall receive one (1) week's vacation with pay. Employees in the employ of the Company for twelve (12) months or more shall receive two (2) weeks vacation with pay and one (1) week's scheduled sick leave as defined in Article XII(A). Employees in the employ of the Company five (5) years or more shall be entitled to a third week's va-

cation. Employees in the employ of the Company ten years (10) or more shall be entitled to a fourth week's vacation. Employees in the employ of the Company twenty-five (25) years or more shall be entitled to a fifth week's vacation.

    *     *     *     *     *

(B) Vacation pay shall be computed on the basis of the employees regular straight time weekly earnings including all premiums, if any.

    *     *     *     *     *

vacation rights and sick leave allowances clearly indicate in Article X(A), (B), (F), (G), (H) and (I) that employees were entitled to vacation pay and sick leave allowance earned during the year predicated upon work and not by the mere passage of time. For instance, in Article X(A) it is provided that employees must be in the employ of the Company "for a period of six (6) months of continuous working service" before being entitled to one week's vacation with pay. Subparagraph (B) provides that vacation pay must be computed "on the basis of the employees regular straight time weekly earnings including all premiums, if any." In subparagraph (F) it is provided that an employee entitled to a vacation who is laid off for lack of work will receive whatever vacation pay and sick leave "which has been earned in the past year plus vacation pay and sick leave pro-rated on the basis of the period worked during the year of said interruption of employment."

There is no claim by Bohack that plaintiffs are not entitled to all the seniority benefits they would have received on the moving escalator of terms and conditions affecting their employment comparable to the positions they would have held if they had remained continuously in Bohack's employment. For instance, when they returned to work they were placed on the seniority list as if they had never left, viz., the seniority of employees of over two years of service. Thus, they would have been treated in case of lay off as if they had been employed continuously from their respective employment dates in 1969 (Art. XI(D)2.) and in case of severance, would have also been entitled to severance allowance based upon the 1969 employment dates (Art. XVII(C)).

The issue here is whether seniority status under the Act, in light of the terms of the collective bargaining agreement, includes vacation pay not earned by work. We find nothing in Section 459(c)(1) and (2) of the Act requiring an interpretation of the status of "seniority" to include paid vacations not otherwise attached to seniority of non-veterans. The notion that the Act provides a returning veteran with an advantage or priority not otherwise accorded to non-veterans, has been explicitly rejected in Tilton v. Missouri Pacific Ry., 376 U.S. 169, 181, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964), and in Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275 at

(F) Any employee entitled to a vacation who is laid off for lack of work without receiving his vacation, shall receive whatever vacation pay and sick leave which has been earned in the past year plus vacation pay and sick leave pro-rated on the basis of the period worked during the year of said interruption of employment.

(G) Employees on vacation, who are called back to work due to an emergency, shall be paid at the rate of double time in addition to the vacation pay. An employee, however, shall have the right to refuse the interruption of such vacation.

(H) Any worker who shall complete a full year shall receive his two weeks vacation in that year and one (1) week sick leave, or more, if eligible under the provisions of this Contract. Vacations shall be selected on straight seniority disregarding job classifications, with the exception of hilo mechanics who shall select vacations within their own classification.

(I) Time not worked by an employee because of illness shall be considered time worked for the purpose of computing the vacation of such employee, provided such employee has worked a minimum of thirty (30) days during the year."

Article XI reads in part as follows:

"(D) The seniority rule shall be applied to the employees covered by this Agreement for the purpose of layoffs, promotions, demotions, vacation and all other similar purposes in the following manner:

\* \* \* \* \*

2. Lay off shall be made in accordance with seniority and recall shall be made in the reverse order of seniority."

Article XVII reads in part as follows:

"The Company agrees to the following severance pay plan:

\* \* \* \* \*

(C) The following schedule, shall be the basis for the computation of severance allowance:

| Period Worked | Severance Allowance |
| --- | --- |
| Less than two years .... | None |
| Two years or more ..... | 1 week's wages for each year of employment." |

p. 286, 66 S.Ct. 1105 at p. 1111, 90 L.Ed. 1230 (1946), where it was stated:

"No step-up or gain in priority can be fairly implied. Congress protected the veteran against loss of ground or demotion on his return. The provisions for restoration without loss of seniority to his old position \* \* \* mean no more."

We do not believe that Congress intended that the seniority status would be sufficient to satisfy a bona fide work requirement of a collective bargaining agreement applicable to all employees. It is our opinion that the decision in Kasmeier v. Chicago, Rock Island and Pacific Railroad Co., 437 F.2d 151 (10th Cir. 1971), correctly interprets the statute and the Congressional intent. In that case the collective bargaining agreement provided that an employee must render 110 days of compensated service in the previous calendar year in order to qualify for vacation rights. Kasmeier had rendered only 53 days of such service in the year before the end of 1967 following his discharge from military service. The court upheld the defendant's denial of vacation pay for the year 1967, predicated upon the language of Section 459(c), categorizing vacation rights as "other benefits" based upon established rules and practices of the employer relating to employees on furlough or leave of absence. It then concluded that since the union agreement did not provide for vacation pay for employees on furlough or leave of absence without the requisite number of days of compensated service, Kasmeier had no claim for vacation pay, stating, at p. 155:

"If Kasmeier were to prevail herein, the discrimination would favor the veteran. For without meeting the collective bargaining agreement standards as non-veterans must do, the returning veteran could merely assert that military duty kept him too long to work the 110 days, and he would therefore be entitled to a paid vacation."

To the same effect is Young v. Southern Pacific Transportation Co., 84 L.R.R.M. 2546 (D.C.Cal. Sept. 19, 1973); Connett v. Automatic Electric Co., 323 F.Supp. 1373 (N.D.Ill.1971). See also Gentile v. United States Trucking Corp., 355 F. Supp. 960, 963–64 (S.D.N.Y.1973).

We similarly conclude in this case that the collective bargaining agreement requires that a paid vacation for employees must be earned by work, and that there is no provision for vacation pay for those who take a furlough or leave of absence without work. Plaintiffs have received all the rights and benefits which would have automatically accrued to them had they remained in Bohack's employment without entering military service, including such vacation pay and sick leave allowance to which they would have been entitled by work. We do not believe it is essential to label vacation pay as "other benefits" in order to reach our conclusion because the criterion here is whether under the collective bargaining agreement vacation pay accrued by the mere lapse of time and accordingly, was a right appertaining to seniority status or whether it was a right which had to be earned by work unrelated to the status of seniority.

Plaintiffs rely primarily on Locaynia v. American Airlines, Inc., 457 F.2d 1253 (9th Cir. 1972), cert. denied, 409 U.S. 982, 93 S.Ct. 317, 34 L.Ed.2d 246 (1972), which in truth is directly contrary to our conclusion, subject to the dissent of Judge Battin. They also cite in support of their position, Accardi v. Pennsylvania Railroad Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966), (involving severance pay based upon seniority); Eagar v. Magma Copper Co., 389 U.S. 1060, 88 S.Ct. 767, 19 L.Ed.2d 866 (1968), (where plaintiff had fulfilled a bona-fide work requirement of a collective bargaining agreement); Morton v. Gulf, Mobile & Ohio R.R., 405 F.2d 415 (8th Cir. 1969), (involving the determination that military service must be considered as employment in calculating the amount of vacation pay to which the returning veteran was entitled); Edwards

v. Clinchfield R.R., 408 F.2d 5 (6th Cir. 1969), (in which time spent in the military service was to be considered in determining the length of vacation to which a returning veteran is entitled); and Hollman v. Pratt & Whitney Aircraft, 435 F.2d 983 (5th Cir. 1970). The first three cases have factual patterns which are at variance from the instant case and do not support the interpretation suggested by plaintiffs. Upon the *Hollman* case plaintiffs place great reliance. There the Court awarded the employees vacation pay for the year in which they entered the military, which pay they had already earned except for the fact that they were not in civilian employment on the last day of the calendar year due to their induction. At the same time the Court refused to grant these employees unearned vacation pay for the year they returned. Thus, in fact, *Hollman* supports the position taken by this Court. Without adding to the literature on the subject, we agree with the analysis in the dissent in *Locaynia, supra*, distinguishing these cases. In this connection, we believe the Court's comment in *Connett, supra*, 323 F.Supp. at p. 1379, is also singularly appropriate:

> "The gist of the plaintiffs' argument is that any benefit that would have automatically accrued to a veteran had he stayed on his civilian job should be given to him upon his return. If this conception were adopted, any returning veteran would be entitled not only to annual vacation benefits for the years in which he was in the armed forces but also to regular pay by the employer for that period of time, as well as compensation for single paid vacation days, Christmas bonuses, and anything else the employer paid to employees during his absence. Plaintiffs seek to push the rationale of *Accardi* and *Eagar* to illogical extremes."

Defendant's motion for summary judgment is granted.

So ordered.