**Anthony M. LiPANI, Plaintiff-Appellant,**

v.

**BOHACK CORPORATION,
Defendant-Appellee.**

**Robert LOESCH, Plaintiff-Appellant,**

v.

**BOHACK CORPORATION,
Defendant-Appellee.**

No. 1, Docket 74–1471.

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1976.

Decided Dec. 6, 1976.

Richard A. Olderman, Atty., Dept. of Justice, Washington, D. C. (Carla A. Hills, Asst. Atty. Gen., New York City, Rex E. Lee, Asst. Atty. Gen., Washington, D. C., David G. Trager, U. S. Atty., Eastern Dis-

---

**4.** Drop's appellate counsel was not his trial counsel.

trict of New York, Brooklyn, N. Y., Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., William J. Kilberg, Sol. of Labor, Harold C. Nystrom, Associate Sol., Donald S. Shire, Associate Sol., William H. Berger, Bobbye D. Spears, Sofia P. Peters, Attys., Dept. of Labor, Washington, D. C., on the briefs), for plaintiffs-appellants.

Jesse I. Levine, New York City (Shaw & Levine, New York City, and William M. Rifkin, New York City, on the brief), for defendant-appellee.

Before LUMBARD, FRIENDLY and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

Plaintiffs-appellants appeal from the judgment of the Eastern District, reported at 368 F.Supp. 282 (E.D.N.Y.1973), in which Judge Bartels granted defendant's motion for summary judgment. Appellants raise two claims on appeal: first, that the district court erred in concluding that vacation and sick leave benefits as provided by the collective bargaining agreement were not perquisites of seniority protected under the veterans reemployment provisions of the Military Selective Service Act (hereinafter "the Act"), § 9(b), 50 U.S.C. App. § 459;[1] and, second, that even if the benefits are not perquisites of seniority, appellants are entitled to have their military service time counted toward the accrual of these benefits by virtue of section 9(c) of the Act.[2]

We find no merit in these contentions and, accordingly, affirm.

The case was decided by the district court on cross motions for summary judgment and upon a stipulated set of facts. Plaintiffs are veterans who were employed by Bohack Corporation prior to entering the military and who were reinstated by Bohack to their former positions upon completing their military service. LiPani was employed from May 6, 1969, until his entry into the service on July 14, 1969 (2 months and 8 days). He was reemployed by Bohack on October 18, 1971 and, at the end of calendar year 1971, had worked for Bohack a total of approximately 4 months and 20 days. Loesch was employed from March 10, 1969, until he left for the service on July 31, 1969 (4 months and 20 days). He was reemployed on October 18, 1971 and, at the end of calendar year 1971, had worked for Bohack a total of approximately 7 months and 2 days.

Bohack credited both appellants with two years seniority as required by section 9(b) of the Act; however, Bohack refused to credit the time appellants spent in the military toward the computation of vacation and sick leave benefits. Accordingly, at the end of calendar year 1971 LiPani was treated as though he had worked for Bohack for 4 months and 20 days and, under the terms of the collective bargaining agreement,[3] was deemed ineligible for either a vacation or a full year's sick leave benefits; since

---

1. The 1974 amendments, Pub.L. 93–508, Title IV, § 404(a), Dec. 3, 1974, 88 Stat. 1594, made certain changes in the Act, none of which is relevant here, and recodified the provisions. See now, chapter 43 of Title 38, Veterans' Benefits, at § 2021. Section 9(b)(B), now 38 U.S.C. § 2021(a)(B), provides that in the case of certain qualifying veterans who return to the employ of a private employer, such veterans shall:

    (1) if still qualified to perform the duties of such position·be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay . . . .

2. Section 9(c)(1), now 38 U.S.C. § 2021(b)(1), provides that a reemployed veteran,

    . . . shall be considered as having been on furlough or leave of absence during such person's period of training and service

in the Armed Forces, shall be so restored or reemployed without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, . . .

3. Article X provides in part as follows:

    (A) All full time employees in the employ of the Company for a period of six (6) months of continuous working service shall receive one (1) week's vacation with pay. Employees in the employ of the Company for twelve (12) months or more shall receive two (2) weeks vacation with pay and one (1) week's scheduled sick leave as defined in Article XII(A). Employees in the employ of the Company five (5) years or more shall be

Loesch had accumulated a total of 7 months and 2 days in Bohack's service, under the agreement he was deemed eligible for one week of paid vacation in December of 1971. Seeking to have his time in the military credited toward the computation of 1971 vacation and sick leave benefits, Loesch brought suit demanding additional vacation pay for one week and sick leave allowance for the year 1971; LiPani sued for a full two weeks vacation pay and sick leave allowance for 1971.[4]

The district court rejected appellants' argument that vacation and sick leave benefits accrued by mere continuous association with the company and found that under the terms of the contract vacation and sick leave benefits had to be "earned during the year predicated upon work and not by the mere passage of time." 368 F.Supp. at 284. The district court based this finding on such factors as 1) that the contract required an employee to perform "six (6) months of continuous working service" before being

> entitled to a third week's vacation. Employees in the employ of the Company ten years (10) or more shall be entitled to a fourth week's vacation. Employees in the employ of the Company twenty-five (25) years or more shall be entitled to a fifth week's vacation.
>
> \* \* \* \* \* \*
>
> (B) Vacation pay shall be computed on the basis of the employees regular straight time weekly earnings including all premiums, if any.
>
> \* \* \* \* \* .
>
> (C) In cases of promotions and demotions, voluntary or otherwise, the vacation rate shall be based on the employee's record three months prior to his vacation and he can qualify only if his higher rate was maintained for four (4) days a week during this three (3) month period.
>
> \* \* \* \* \* \*
>
> (F) Any employee entitled to a vacation who is laid off for lack of work without receiving his vacation, shall receive whatever vacation pay and sick leave which has been earned in the past year plus vacation pay and sick leave pro-rated on the basis of the period worked during the year of said interruption of employment.
>
> \* \* \* \* \* \*
>
> (H) Any worker who shall complete a full year shall receive his two weeks vacation in that year and one (1) week sick leave, or

entitled to a one week vacation, 2) that vacation pay was computed on the basis of the employee's weekly earnings including premiums, and, 3) that in the event an employee entitled to a vacation was laid off, the employee was awarded any vacation and sick leave earned but not taken in the past year plus vacation pay and sick leave prorated on the basis of time worked in the year of the lay-off. See 368 F.Supp. at 284. The court then went on to conclude that Congress did not intend to preclude the use of a bona fide work requirement as a prerequisite to the granting of vacation and sick leave benefits. See 368 F.Supp. at 285.

The district court's opinion preceded the Supreme Court's holding in *Foster v. Dravo Corp.*, 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975), and is reinforced by it. In *Foster* the Court dealt with a collective bargaining agreement under which eligibility for vacation was tied to a 25 week work requirement, which plaintiff was unable to meet because of intervening military service.

> more, if eligible under the provisions of this Contract. . . .
>
> (I) Time not worked by an employee because of illness shall be considered time worked for the purpose of computing the vacation of such employee, provided such employee has worked a minimum of thirty (30) days during the year.
>
> (J) Employees unable to work in a new year because of illness shall be paid vacation monies earned during the preceding year on a pro-rated basis. If any such employee becomes deceased, said monies shall be paid to the heir of the deceased employee.
>
> Article XII provides in part as follows:
>
> (A) The Company agrees to grant ten (10) days of sick leave in each calendar year for those employees who have completed at least one (1) calendar year of employment. For those employees who have less than one (1) calendar year of employment as of January 1st of any year, sick leave shall be pro rata until the beginning of the following calendar year. For those eligible for ten (10) days sick leave in each calendar year, five (5) of the ten (10) days may be taken as vacation, outside of the vacation period. The remaining five (5) days can only be taken as regular sick leave.

4. Appellants have been represented by the government throughout this action, pursuant to § 9 of the Act, 50 U.S.C. App. § 459(d), now 38 U.S.C. § 2022.

The Third Circuit found that under the contract, benefits were not a reward for mere length of service and hence not a form of seniority, but were a form of deferred compensation for work performed. In affirming the Supreme Court noted that because a vacation is commonly conceived of as a reward for and respite from a lengthy period of labor, "the statute should be applied only where it clearly appears that vacations were intended to accrue automatically as a function of continued association with the company." 420 U.S. at 101, 95 S.Ct. at 884. Significantly, in finding the collective bargaining agreement's provision for vacation benefits to be based upon a bona fide work requirement, the Court focused upon three factors highly similar to those noted by the district court: 1) the presence of a 25 week work requirement; 2) the fact that vacation benefits were computed on the basis of work performed; and 3) the fact that the agreement provided for a pro rata distribution of benefits in the event an employee was laid off. 420 U.S. at 99–100, 95 S.Ct. 879.

█ Appellants argue that the present case is distinguishable from *Foster* on the ground that the collective bargaining agreement there required that employees receive earnings in 25 weeks each year in order to be eligible for vacation benefits; in contrast, appellants argue that the contract here at issue provides that one week of paid vacation accrues after "six months of continuous working service" and thereafter benefits accrue merely by virtue of the fact that an individual is in the "employ" of the company. If read literally and in isolation, the language of Article X(A) of the contract might lead to the conclusion that Li-Pani was not entitled to any vacation benefits (because he did not complete six months of "working service") but Loesch was entitled to the full year's benefits (because he met the six-month work requirement and, under the statute, was in the "employ" of the company for more than 12 months). However, we conclude that in light of related provisions of the contract and the record,

Judge Bartels was clearly correct in finding that the vacation and sick leave benefits here are predicated upon work and not the mere passage of time. In an affidavit submitted in support of appellee's motion for summary judgment Robert Bohack, personnel director for Bohack, stated that pursuant to the agreement vacation and sick leave benefits at Bohack must be earned and "do not accrue automatically with the mere passage of time"; further, Bohack stated that in negotiating the terms of the agreement the concept that vacation is an earned benefit was considered by all parties to be "indisputable" and was assumed to be the general rule. As noted earlier, under the agreement vacation pay is computed on the basis of the employee's actual earnings including premiums and in the event of a lay-off eligible employees receive benefits on a pro rata basis. As the Court noted in *Foster,* such provisions lend substantial support to appellee's claim that the vacation benefits are a form of deferred compensation. See 420 U.S. at 100, 95 S.Ct. 879.

Similarly, we find that sick leave benefits under the contract are a form of deferred compensation of the same general nature as vacation pay, see *Jackson v. Beech Aircraft Corp.,* 517 F.2d 1322, 1326 (10th Cir. 1975); but see *Nichols v. Kansas City Power & Light Co.,* 391 F.Supp. 833, 840–41 (W.D. Mo.1975); *Aiello v. Detroit Free Press, Inc.,* 397 F.Supp. 1401 (E.D.Mich.1974), *rehearing den.* 77 CCH Labor Cases ¶ 10,999 (June 25, 1975); in fact, because it appears that neither of the appellants was ill during 1971, under Articles X(A) and XII(A) of the contract, appellants' claim for added sick leave amounts to a claim for additional vacation benefits. As in the case of vacation benefits, sick leave benefits are prorated in the event an employee is laid off; further, in the case of employees who have worked less than one year, the contract provides that sick leave allowance is earned on a pro rata basis. Moreover, unlike vacation benefits, which increase with seniority,[5] there is no relationship between the size of the benefits and seniority: each employee receives 10

---

**5.** Under Article X(A) of the contract the length of an employee's vacation increases with the

length of the employee's association with the company. See note 1, *supra.* Although the

days of sick leave allowance for each year of "completed" employment regardless of the employee's length of association with the company. Thus, we agree with the district court that under the agreement vacation and sick leave benefits are to be earned by work and do not accrue automatically from continued association with the company. The fact that the work requirement correlates only loosely with the benefits and that appellants are able to hypothesize "bizarre results" is not sufficient to invoke the statutory guarantee.[6] See *Foster v. Dravo Corp., supra,* 420 U.S. at 99–101, 95 S.Ct. 879; *Jackson v. Beech Aircraft Corp., supra,* 517 F.2d at 1327.

Finally, appellants contend that Bohack employees on leave of absence continue to acquire vacation and sick leave benefits; accordingly, appellants claim that they are entitled to have time spent in the service counted toward the accrual of these benefits by virtue of section 9(c) of the Act, which entitles returning servicemen to the same treatment given employees on furlough or leave of absence. See *Foster v. Dravo Corp., supra,* 420 U.S. at 102, n. 10, 95 S.Ct. 879; *Accardi v. Pennsylvania Railroad Co.,* 383 U.S. 225, 231, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966). As the district court found, see 368 F.Supp. at 285, the contract contains no specific provision for vacation or sick leave benefits for employees on furlough or leave of absence. However, in an affidavit Alex MacBain, the union business representative, indicated that in practice the contract is construed to allow employees who are on union business or jury duty, as well as employees who are unable to work because of illness or disability, to continue to accrue vacation and sick leave benefits. See *McKinney v. Missouri-Kansas-Texas*

*Railroad Co.,* 357 U.S. 265, 273–74, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958). Taking these allegations as true, we fail to see how they put into operation section 9(c) of the Act. The Act requires only that an employer give to a returning serviceman the same treatment he would give to an employee on a leave of absence or a furlough. See *Foster v. Dravo Corp., supra,* 420 U.S. at 102, n. 10, 95 S.Ct. 879; *Accardi v. Pennsylvania Railroad Co., supra,* 383 U.S. at 231, 86 S.Ct. 768 (1966). Nothing in MacBain's affidavit contradicts the affidavits submitted by appellee, which averred that appellants were given treatment identical to that provided employees on extended leaves of absence. The record is devoid of any indication that Bohack has ever granted an employee a two-year leave of absence and we deem it highly unlikely that if such an event did occur, the company would allow the employee to continue to accrue vacation and sick leave benefits. It is noteworthy that under Article XIV of the contract the maximum leave of absence obtainable is eight weeks (although this does not include absences due to illness). Because it is clear that the Act was not intended to place returning servicemen in a better position than other employees, see *Tilton v. Missouri Pacific Railroad Co.,* 376 U.S. 169, 181, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964); *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 286, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946), we find no merit in appellants' claims under section 9(c) of the Act.

Affirmed.

length of vacations is not at issue here, appellees appear to have conceded at one point that once an employee has met the work requirement, the length of his vacation is a matter of seniority. See Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment at 10, Record, doc. no. 10; *Foster v. Dravo Corp., supra,* 420 U.S. at 101, n. 9, 95 S.Ct. 879.

**6.** Indeed, the results imagined by appellants are no more bizarre than the case, described by the *Foster* Court, that "a Dravo employee theoretically could earn full vacation benefits by doing as little as one hour's work in each of 25 weeks during the year." 420 U.S. 99, 95 S.Ct. 884. Yet the Court still regarded the vacation benefits "as a form of short-term compensation for work performed." 420 U.S. at 100, 95 S.Ct. at 884.