In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 20-3246

MICHAEL MOSS, individually and on behalf of all others simi-larly situated,

*Plaintiff-Appellant,*

*v.*

UNITED AIRLINES, INC., *et al.*,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-08496 — **Thomas M. Durkin**, *Judge.*

---

ARGUED SEPTEMBER 13, 2021 — DECIDED DECEMBER 14, 2021

---

Before RIPPLE, ROVNER, and SCUDDER, *Circuit Judges.*

RIPPLE, *Circuit Judge*. Michael Moss brought this class ac-tion against United Airlines ("United") under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). This statute requires employers to provide employees on military leave any seniority-based benefit the employee would have accrued but for the military leave. USERRA also requires employers to provide employees on

military leave any nonseniority-based benefits that the employer provides to employees on a comparable leave of absence. This latter provision is not at issue in this appeal.

The district court granted summary judgment to United Airlines on Mr. Moss's claim that the company had violated USERRA by denying sick-time accrual in excess of ninety days to military reservist employees. The district court held that sick-time accrual was not a seniority-based benefit within the meaning of the statute.[1]

We now affirm the judgment of the district court. The district court correctly determined that United's sick-time accrual is not a seniority-based benefit. For a benefit to be seniority-based, the benefit must be a reward for length of service. Sick leave is not such a reward.

# I

# BACKGROUND

## A.

From April 1, 2005, to 2010, United Air Lines pilots, who also served in the reserve components of the Armed Forces of the United States and were called periodically to active duty, accrued sick time throughout their entire military leave. In contrast, Continental Pilots, who served the Country in the same capacity, accrued sick time only through the first thirty days of their military leave during the same period.

---

[1] The court further held that military leave was not comparable to other forms of leave offered by United. This part of the district court's holding is not at issue on this appeal.

In 2010, these two airlines began a merger process. They first became wholly owned subsidiaries of United Continental Holdings. During this stage, the separate bargaining agreements of each legacy airline continued to govern for two years. In March 2013, United and Continental merged into a single entity—United Airlines.[2] Nevertheless, the policies of the two legacy airlines continued in effect until United Airlines standardized the sick-time policy in 2014: "[A]ll pilots only accrued sick time during the first ninety (90) days of military leave."[3]

The operative collective bargaining agreement sets forth United Airlines' post-standardization policy: "[F]or each Bid Period of Active Employment, five (5) hours of sick leave shall be deposited into a Pilot's sick leave bank up to a maximum of 1300 hours."[4] "Active Employment" is when "a Pilot is available for assignment, on sick leave or on vacation for any part of a Bid Period."[5] A Bid Period is, essentially, one month. Therefore, all pilots accrue a consistent five hours of sick time per Bid Period. Two final provisions on United's sick-time policy are also relevant: (a) "Sick leave with pay shall be granted only in cases of actual sickness[,]"

---

[2] Before the merger, "United Air Lines" had a space; following the merger, the space was removed: "United Airlines."

[3] R.95-1 at 4. We will refer to pilots or leave policies from before 2014 as, for example, the "legacy United pilots" or "legacy Continental leave." Anything after 2014 will be the "modern" or "current" era.

[4] R.94-2 § 13-A-1.

[5] *Id.* § 2-A.

and (b) "upon separation of employment, a Pilot shall not receive payment for any balance in his sick leave bank."[6]

United Air Lines hired Michael Moss, the plaintiff, in early 2000. On September 16, 2009, United Air Lines placed Mr. Moss on furlough, but he was hired by Continental on January 24, 2012. He continued working at United Airlines through the merger process. Throughout the relevant time period, he also held a commission as a Lieutenant Colonel in the Reserve Component of the United States Marine Corps.

### B.

On August 30, 2016, Mr. Moss brought this action against United Airlines, alleging violations of USERRA. Count I (the only Count at issue on appeal) alleged that United violated USERRA by denying sick-time accrual to pilots on military leave because (a) sick time is a seniority-based benefit and thus should have continuously accrued; or (b) sick-time accrual was available to pilots on comparable periods of leave. Count II made the same allegations about vacation time accrual; Count III addressed the same alleged violations with respect to pension payments.

The district court certified classes for each Count. The sick-time class for Count I is comprised of:

> All past and present pilots employed by the Company from April 1, 2005, to the present, who: (i) did not accrue sick time while on periods of military leave from April 1, 2005, to the present; and (ii) were not at the maximum sick

---

[6] *Id.* § 13-A-5; *Id.* § 13-B.

> leave accrual level of 1,300 hours at the time of their military leave(s) of absence or at any time thereafter.[7]

The parties moved for summary judgment. United asked for summary judgment on all counts; Mr. Moss only asked for summary judgment on Counts I and II.

The district court granted United's motion as to Counts I and II. The district court first addressed Count II (vacation accrual) and held that "the 'real nature' of vacation days in this case is not a reward for length of service. Thus, vacation days are not a seniority-based benefit under the collective

---

[7] R.68 at 7. When the class definition sweeps within it individuals who could not have suffered injury, it is too broad. *See Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009). In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021), the Supreme Court reminded us that "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id.* at 2205 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019)). It also made clear that plaintiffs must "maintain their personal interest in the dispute at all stages of litigation." *Id.* at 2208. Article III standing, the irreducible constitutional minimum, requires a plaintiff to have suffered an injury in fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Although it did not have the benefit of *TransUnion* when it focused on the class definition issue, the district court nevertheless examined the necessity of injury in fact. On this record, we are not prepared to say that the district court erred. Nevertheless, we note that the advent of *TransUnion* sets the stage for a renewed examination of the intersection of the demands of Article III and the requirements of Rule 23 of the Federal Rules of Civil Procedure.

bargaining agreement."[8] In reaching this conclusion, the district court rejected Mr. Moss's argument that vacation-time accrual is a seniority-based benefit because it "accrues solely with the passage of time."[9] Noting that "this is true of any employment benefit," the court concluded that this characteristic "is not particularly informative, let alone dispositive, of whether vacation day accrual is seniority-based."[10]

The court then concluded that "[s]ince vacation days are not a seniority-based benefit, Plaintiffs are entitled to only the 'other' benefits 'generally provided,' to employees on 'comparable leaves of absence.'"[11] The district court disagreed with Mr. Moss that United's jury duty, association leave, and sick leave are "'comparable' to military leave, such that vacation time accrual should be available to military leave longer than 90 days."[12]

---

[8] R.106 at 8; *cf. Ala. Power Co. v. Davis*, 431 U.S. 581, 589 (1977) ("If the benefit … is in the nature of a reward for length of service, it is a 'perquisite of seniority.'"); *Accardi v. Penn. R.R. Co.*, 383 U.S. 225, 230 (1966) ("The use of the label 'compensated service' cannot obscure the fact that the real nature of these payments was compensation for loss of jobs.").

[9] R.106 at 7 (quoting R.95 at 11).

[10] *Id.* at 8.

[11] *Id.* at 9 (first quoting 38 U.S.C. § 4316(b)(1)(B); and then quoting *Crews v. City of Mt. Vernon*, 567 F.3d 860, 865 (7th Cir. 2009)).

[12] *Id.* at 10–13. Mr. Moss has dropped this argument from his appeal. Instead, he argues that United's legacy military leave policy should be compared to Continental's legacy military leave policy.

Having disposed of Count II (vacation accrual), the district court turned to Count I, the sick-time accrual claim, and entered summary judgment for United. It stated:

> Likely because there is no material difference in the accrual of "sick time" and "vacation time" under the collective bargaining agreement, Plaintiffs' arguments on Count I mirror their arguments on Count II. Therefore, the Court grants summary judgment to Defendants on Count I for the same reasons it grants summary judgment to Defendants on Count II.[13]

The district court then addressed potential objections based upon the collective bargaining agreement's different policies on the accrual of sick time and the accrual of vacation time. The court explained that "the numbers of hours or days accrued, and the rates of accrual" are "differences in the 'particular formulas' by which accrual is 'calculated,' and thus are not material to the Court's analysis."[14]

The parties subsequently settled Count III, and the district court approved that settlement on October 19, 2020. After the approval of the settlement, the district court entered

---

[13] *Id.* at 13–14 (footnote omitted). Mr. Moss contends that the district court's treatment of Count I violated Circuit Rule 50 for not adequately documenting the reasons for the grant of summary judgment. We disagree. The district court's rationale was clear from the record and the court's opinion. *See Stoller v. Pure Fishing Inc.*, 528 F.3d 478, 480 (7th Cir. 2008).

[14] R.106 at 13 n.6 (quoting *Ala. Power*, 431 U.S. at 592).

final judgment, and Mr. Moss timely appealed the grant of summary judgment on Count I, the sick-time accrual claim.

## II

## DISCUSSION

"We review the district court's grant of summary judgment de novo." *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643 (7th Cir. 2020). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). Here the facts are not disputed.

We also note that it is well established that any "interpretative doubt is to be resolved in the veteran's favor," *Brown v. Gardner*, 513 U.S. 115, 118 (1994), and that "provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor," *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220 n.9 (1991).

## A.

USERRA is the modern iteration of a line of statutes designed to protect employment and reemployment rights of those who serve in the Armed Forces. First, the Selective Training and Service Act of 1940 required private employers to reemploy qualified military veterans to their previous position or "to a position of like seniority, status, and pay." Pub. L. No. 76-783, § 8(b)(3)(C), 54 Stat. 885, 890 (codified at 50 U.S.C. § 301 *et seq.* (repealed 1955)). In an early case interpreting the Selective Training and Service Act, the Supreme Court gave breath to what has become known as the "escalator principle": "[The returning servicemember] does not step back on the seniority escalator at the point he stepped off.

He steps back on at the precise point he would have occupied had he kept his position continuously during the war." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284–85 (1946). This principle was codified in the Veterans' Reemployment Rights Act[15] and continues to be a foundational principle of seniority-based reemployment rights under USERRA.

Enacted in 1994, USERRA serves three purposes:

> (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;

> (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and

> (3) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. § 4301. USERRA was not intended to change or disrupt the longstanding caselaw developed under the predecessor statutes. Congress viewed the existing law protect-

---

[15] The Veterans' Reemployment Rights Act was enacted as part of the Vietnam Era Veterans' Readjustment Assistance Act of 1974. Pub. L. No. 93-508, § 404, 88 Stat. 1578, 1594 (1974).

ing veterans' rights and the cases interpreting those laws as "successful," and intended them to remain in full effect, to the extent consistent with USERRA. 20 C.F.R. § 1002.2.

**B.**

**1.**

Mr. Moss first submits that he is entitled to sick-pay credit during his time of military service because sick pay is a seniority benefit of his employment with United. He views sick time as a future-oriented benefit because it provides economic security in case of illness. In support of this characterization, Mr. Moss notes that sick-time accrual does not expire annually, can only be used if an employee is sick, and is not paid out at the end of an employee's employment. The work requirement is, in his view, illusory because the benefit accrues without the performance of actual work; working additional hours cannot increase the sick time accrued. These considerations, considered together, demonstrate, in his view, that United's sick-time accrual is a perquisite of seniority and therefore should have accrued while Mr. Moss was on military leave.

United disagrees. In its view, sick-time accrual is not a seniority-based benefit for two main reasons. First, all employees earn the same amount of sick time. There is no vesting threshold; employees start to accrue sick time on their first day of work. Second, employees can only use sick time when they are actually sick. Employees cannot bank time over years knowing that the time can be used for a longer vacation later, thus incentivizing them to keep working.

In assessing these views, we begin, as we always do, with the words of the statutory provision:

> A person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.

38 U.S.C. § 4316(a). Thus, returning servicemembers step back onto the seniority escalator where they would have been but for the military service; they receive any seniority-based benefits to which they would have been entitled had they remained continuously employed.

A right and benefit is seniority-based if the right (1) "would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer"; and (2) if "it is in the nature of a reward for length of service." *Ala. Power Co. v. Davis*, 431 U.S. 581, 589 (1977);[16] *DeLee v. City of Plymouth*, 773 F.3d 172, 177–78, 180 (7th Cir. 2014) (applying the *Alabama Power* test); *see also* 20 C.F.R. § 1002.212 (listing the factors set forth in the *Alabama Power* test, along with one factor not relevant here,[17] as interpretive guidance to determine if a benefit is seniority-based).

---

[16] Although *Alabama Power* pre-dates USERRA, the *Alabama Power* test and pre-USERRA case law remain in full effect to the extent consistent with USERRA. *See, e.g.*, *Crews*, 567 F.3d at 865 (citing 20 C.F.R. § 1002.2).

[17] Whether United had an "actual custom or practice to provide or withhold the right or benefit as a reward for length of service" only applies where the actual practice differs from the practice on paper. 20 C.F.R.

(continued … )

The Supreme Court of the United States, like the district court in this case, has pointed out that although the principles set forth in *Alabama Power* are straightforward, their application in a practical setting is not always easy. *See Coffy v. Republic Steel Corp.*, 447 U.S. 191, 203 (1980) ("[E]ven the most traditional kinds of seniority privileges could be as easily tied to a work requirement as to the more usual criterion of time as an employee." (quoting *Ala. Power*, 431 U.S. at 592)). As the district court noted, the difficulty is rooted in the practical reality that there is an "inherent tie between time and work" and a lack of an "objective difference between a 'work requirement' (or 'compensation for services rendered') and 'time as an employee' (or 'length of service'), because employees spend their time working."[18]

The Supreme Court wrestled with this conceptual problem in *Foster v. Dravo Corp.*, 420 U.S. 92 (1975). There, Foster worked for his employer at the beginning of 1967, left for military service, and was reemployed for the remainder of 1968. *Id.* at 94–95. Although he did not meet the required twenty-five weeks of work for vacation benefits, he asked his employer for the vacation time accrued during both years. *Id.* at 95. The Supreme Court did not sustain his claim;

---

( … continued)
§ 1002.212(c); *see also id.* ("Provisions of an employment contract or policies in the employee handbook are not controlling if the employer's actual custom or practice is different from what is written in the contract or handbook."). Here there is no allegation that United's actual practice of providing sick time differed from that written in the collective bargaining agreement.

[18] R.106 at 4 (emphasis omitted).

it decided that the vacation benefits at issue were properly characterized as "short-term compensation for work performed." *Id.* at 100. In reaching that decision, the Supreme Court considered the work requirement, the option to earn more vacation time through overtime, and the pro rata payout if an employee left his employment early. In the final analysis, however, the nature of the benefit, the "common conception of a vacation as a reward for and respite from a lengthy period of labor" convinced the Court that the statutory provision protecting seniority rights did not apply. *Id.* at 101. *Foster* did not hold that *all* vacation-time accrual was a nonseniority benefit. The Court explicitly noted that "the statute should be applied only where it clearly appears that vacations were intended to accrue automatically as a function of continued association with the company." *Id.*

In *Alabama Power*, by contrast, the Court reasoned that the pension plans at issue were seniority based because their "true nature" was a reward for length of service. 431 U.S. at 593. "The most significant factor pointing to this conclusion is the lengthy period required for pension rights to vest in the employee." *Id.* In *Coffy*, the Court considered the case of an individual who had been laid off after his return from a period of military service. He received supplemental unemployment benefits for twenty-five weeks. *Coffy*, 447 U.S. at 193. Had his civilian work history not been interrupted by a period of military service, he would have received fifty-two weeks of supplemental unemployment benefits. *Id.* at 193–94. The Supreme Court held the unemployment benefits were seniority based: Their essential function "is to provide economic security for regular employees in the event they are laid off. Protection against layoff is, of course, one of the traditional attributes of seniority." *Id.* at 200. Furthermore,

the employees in *Coffy* were only entitled to the benefits if they had worked two continuous years prior to being terminated. *Id.* at 198–99. Thus, the benefits were a "reward for length of service." *Id.* at 205.

Two of our fellow circuits already have addressed the question we face today. Although each court understandably focused on the facts of the case before it, the reasoning of each court is helpful. In *LiPani v. Bohack Corp.*, 546 F.2d 487, 490 (2d Cir. 1976), our colleagues in the Second Circuit characterized sick leave as a form of deferred compensation of the same general nature as vacation pay. The sick time at issue there was predicated upon a work requirement: "one week of paid vacation accrues after 'six months of continuous working service.'" *Id.* Also, there was no relationship between seniority and the benefits; all employees earned the same amount of sick time during each year of employment. *Id.* at 490–91. The Tenth Circuit came to the same conclusion, holding sick-time accrual to be nonseniority-based because it was tied to a work requirement. *Jackson v. Beech Aircraft Corp.*, 517 F.2d 1322, 1326 (10th Cir. 1975), *overruled on other grounds by Ala. Power*, 431 U.S. 581; *see also Hoefert v. Am. Airlines, Inc.*, 438 F. Supp. 3d 724, 735–36 (N.D. Tex. 2020) (holding sick-time accrual to not be a seniority-based benefit where tied to a "month of service").

**2.**

We now assess United's sick-time accrual policy under the decisional matrix provided by *Alabama Power*. We first ask whether the right "would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer." This factor—synthesized in *Alabama Power* from the existing caselaw—asks whether the benefit

was awarded automatically or subject to discretion. *See McKinney v. Mo.-Kan.-Tex. R.R. Co.*, 357 U.S. 265, 272 (1958) (holding that a discretionary promotion was not a perquisite of seniority); *see also Ala. Power*, 431 U.S. at 585 (citing *McKinney* in explaining the development of the two-prong test); *Coffy*, 447 U.S. at 199.

We answer this question in the affirmative. Mr. Moss would have continued to accrue sick time with reasonable certainty if he had been employed continuously by United. Notably, there is no discretion involved. Had Mr. Moss not been on military leave, it was reasonably certain that he would have accrued sick time.

Having determined that the first prong of the two-part conjunctive test is satisfied, we turn to the second prong: Whether the benefit is a reward for length of service. Here, we think it clear that the sick pay in question is not such a reward. A benefit is seniority-based if the "real nature" of the benefit is a "reward for length of service" rather than "compensation for services rendered." *Ala. Power*, 431 U.S. at 588–89. Our inquiry is therefore whether the benefit is backward-looking compensation for work performed or a future-oriented longevity incentive.

*Alabama Power* instructs that the "*most significant factor* pointing to th[e] conclusion [that the pension payment is a reward for length of service] is the lengthy period required for pension rights to vest in the employee." *Id.* at 593 (emphasis added). United's sick-time accrual policy has no vesting period. From their first day at United, all pilots earn five

hours per Bid Period.[19] A lack of a vesting threshold suggests sick-time accrual is not tied to seniority but is deferred compensation designed to cover those periods when an employee is unable to report for work because of illness, an event inherent in the human condition.

Nor do United employees accrue more sick time the longer they have been at the company. Here, all employees earn the same five hours per Bid Period, day in and day out, without regard to how long they have been employed. This consideration also suggests sick time to not be a product of seniority. *See LiPani*, 546 F.2d at 490 (finding persuasive the lack of relationship between seniority and sick-time accrual).

The fact that sick time is not seniority-based becomes clearer by comparing its real nature to that of other benefits.[20] Pensions, severance pay, and supplemental unemployment benefits incentivize workers to continue working

---

[19] Also, we note that United provides for accelerated accrual for a pilot who uses more than 255 hours of sick leave because of a single illness and for "fronted" hours for new-hire pilots. R.94-2 § 12-A-1-a to -b. Mr. Moss does not suggest these facts are relevant, nor do they influence our analysis.

[20] During the enactment of USERRA, the Director of the Office of Veterans' Employment, Reemployment, and Training testified before Congress that: "Various courts have also found that the returning servicemember is not entitled to benefits such as … sick days … which have been determined to be short term compensation for work performed." Letter from Hary Puente-Duany, Dir., Off. of Veterans' Emp., Reemployment & Training, to Hon. John D. Rockefeller, Chairman, Comm. on Veterans' Affs., *reprinted in* S. Rep. 103-158, at 93 (1993).

at a company.[21] These benefits look to the future—they give a reason to stay at a job and have accordingly been properly held to be perquisites of seniority. On the other hand, sick time is a respite. Without sick time, the employee would have had to go to work ill; with sick time, the employee has a respite, a break from their work, as compensation for the services they have rendered.

Mr. Moss counters that attributes of United's sick leave point to characterizing it as seniority-based. Specifically, he notes that United sick-time accrual does not expire annually, can only be used if an employee is sick, and is not paid out at the end of an employee's employment. We think that these considerations, whether considered separately or together, reaffirm that sick time is more properly characterized as a period designed to allow the working employee a respite and to encourage the sick employee to stay away from the workplace. As Mr. Moss points out, sick time does not expire annually. This feature might suggest an incentive to remain at a company (so the employee does not lose their banked time), but that consideration is certainly reduced in importance because employees cannot take sick time without actually being sick. Sick time therefore cannot be used to augment an employment transition, or to extend a vacation. Moreover, in the ordinary course of human events, sick time

---

[21] *Ala. Power*, 431 U.S. at 593–94 (pension payments); *Accardi*, 383 U.S. at 230 (severance pay); *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 205–06 (1980) (supplemental unemployment benefits).

will be used periodically. It is generally not regarded as protection against long-term illness or disability.[22]

By contrast, supplemental unemployment benefits, like those at issue in *Coffy*, provide economic security based on seniority. Supplemental unemployment benefits promise income where otherwise the employee would not have received any. In this way, supplemental unemployment benefits encourage employees to stay with an employer based on the promise of the future benefit. Sick time however offers a brief respite earned on a pro rata monthly basis, in compensation for labor, to recover and then come back to work. Sick time does not provide economic security in the same way that supplemental unemployment benefits do. It only offers a brief respite.

United's sick-time accrual policy contains, moreover, a work requirement. Benefits conditioned on a bona fide work requirement are more likely to be compensation than a reward for long service. "Generally, the presence of a work requirement is strong evidence that the benefit in question was intended as a form of compensation." *Foster*, 420 U.S. at 99. Courts read through illusory and insubstantial work requirements—the labels do not control. *Compare Accardi v. Penn. R.R. Co.*, 383 U.S. 225, 229–30 (1966) (explaining that the "use of the label 'compensated service' cannot obscure" the illusory nature of the work requirement), *with Foster*, 420 U.S. at 99 (explaining that providing additional benefits

---

[22] United also offers Medical Leave, Company Offered Leaves of Absence, Family & Medical Leave, and Maternity/Paternity Leave. *See* R.94-2 §§ 12-B, -C, -E, -F.

for overtime and pro rata payment for early termination suggested that the work requirement was bona fide).

Here, the parties dispute whether the United sick leave policy contains a legitimate work requirement. We believe that it does. The collective bargaining agreement contains the following provision: "for each Bid Period of Active Employment, five (5) hours of sick leave shall be deposited into a Pilot's sick leave bank up to a maximum of 1300 hours."[23] "Active Employment" is defined as "a Pilot is available for assignment, on sick leave or on vacation for any part of a Bid Period."[24] A Bid Period is defined as "the period from the first day of, to and including the last day of each of twelve (12) thirty (30) or thirty-one (31) day periods."[25]

Mr. Moss questions whether the requirement that a pilot need only be available for assignment, on sick leave, or on vacation, is sufficiently substantial to constitute a bona fide work requirement. He submits that being "available for assignment" "for any part of a Bid Period" could be seen as being no real requirement at all. United takes another view. It sees the work requirement in the collective bargaining agreement as a real effort to compensate pilots for work actually performed. It points out that the requirement excludes, among other things, personal leave, and thus requires the pilot to actually be working before earning sick time.

---

[23] R.94-2 § 13-A-1.

[24] *Id.* § 2-A.

[25] *Id.* § 2-I.

United has the better of the argument. By conditioning sick-time accrual on "Active Employment," United conditions accrual on work. Given the nature of a pilot's scheduling and the industry overall, counting "on call" time as compensated time for purposes of the sick-time program is reasonable.

In sum, sick time would have accrued with reasonable certainty had Mr. Moss remained at United. There was no discretion involved. There is no vesting period and no relationship between seniority and benefits. All United employees accrue the same five hours per Bid Period, from the new hire to the most senior pilot. The real nature of sick-time accrual is to provide a respite from work, not to incentivize longevity.

## C.

USERRA also prohibits providing nonseniority-based benefits to some employees on leave but not to employees on comparable military leave. 38 U.S.C. § 4316(b)(1)(B).[26]

---

[26] This subsection of the statute provides:

> (b)(1) … [A] person who is absent from a position of employment by reason of service in the uniformed services shall be—
>
> …
>
> (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

(continued … )

USERRA therefore mandates that if an employer offers non-seniority-based benefits to an employee taking leave, it must provide to servicemembers on military leave the "most favorable" benefit offered to employees taking a comparable leave. 20 C.F.R. § 1002.150(b).

In the district court, Mr. Moss argued that jury duty, association leave, and sick leave were comparable to military leave such that servicemembers were to be afforded the most favorable benefits that employees on those nonmilitary leaves received. The district court held that jury duty, association leave, and sick leave were not comparable to military leave. Mr. Moss does not renew that argument here, and we therefore cannot consider it.

Now, Mr. Moss puts forth a new argument. He asks us to compare legacy military United leave and legacy military Continental leave. We cannot. Arguments not adequately presented to the district court are waived on appeal. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010). Because Mr. Moss did not adequately present this issue to the district court, it is waived.

---

( … continued)
38 U.S.C. § 4316(b).

Because we hold that Mr. Moss waived this argument, we take no position on whether 38 U.S.C. § 4316(b)(1)(B) only prohibits providing a benefit to an employee on civilian leave but not to an employee on comparable military leave or if it also prohibits providing a benefit to one employee on military leave but not to another on a comparable military leave.

## Conclusion

We hold that sick-time accrual is not a seniority-based benefit. Accordingly, we affirm the decision of the district court.

AFFIRMED