Karl RAYPOLE (84–3041), Kenneth M. Lowe (84–3039), Plaintiffs-Appellees,

v.

CHEMI-TROL CHEMICAL CO., INC., Defendant-Appellant.

Nos. 84–3039, 84–3041.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 8, 1984.

Decided Feb. 6, 1985.

John H. Burson (argued), Rolf H. Scheidel, Shumaker, Loop & Kendrick, Toledo, Ohio, for defendant-appellant.

Patrick J. Foley, Asst. U.S. Atty., Toledo, Ohio, Stanford Dubin (argued), John F. Depenbrock, Jr., for plaintiffs-appellees.

Douglas S. McDowell, McGuiness & Williams, Washington, D.C., amicus curiae, Equal Employment Advisory Council.

David A. Hildebrandt (argued), Lee, Toomey & Kent, Washington, D.C., amicus curiae, The Profit Sharing Council of America.

Before MERRITT, WELLFORD and MILBURN, Circuit Judges.

MILBURN, Circuit Judge.

In this case of first impression, we are asked to decide whether the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021, requires annual cash contributions by defendant Chemi-Trol Chemical Co., Inc. ("Chemi-Trol" or "Company") to the Company's Profit Sharing Plan and Trust ("Plan") on behalf of plaintiffs, returning veterans, for the period of

time they spent in military service. The district court answered this question in the affirmative. We reverse the district court's decision (1) because the true nature of the defendant's Profit Sharing Plan is short-term compensation for work performed; and, (2) because the plaintiffs' rights to contributions under the Plan were subject to a significant contingency at the time they entered military service.

## I.

In 1962, Chemi-Trol installed a Profit Sharing Plan under which it is able to deduct its contributions to a trust for its employees with deferred tax consequences to the employees. Under the 1962 Plan, contributions were made to the trust fund based on two formulas. Under the first formula, the Company automatically made contributions if net profits were equal to a certain net worth of the Company at the end of the year. Under the second formula, contributions were made only if the board determined that the yearly employee productivity merited the employees' participation in the additional profits.

The Plan was amended in 1976 to conform to the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1381 (1976). At that time, the Company also changed the Plan so that contributions are made only at the discretion of the board.

In order to be eligible to participate in the Plan, an employee first must have completed one year of continuous employment. Under the pre-1976 Plan an employee was defined as any individual employed by the Company whose customary employment is more than ten months in a period of twelve months. An employee eligible to participate in the Plan only received a contribution if he actually received compensation during the year for which the contribution was paid and was employed on the last day of the plan year. Under the terms of the 1976 Plan, a participant only shares in the Company's annual contribution if 1,000 hours of service are completed during the plan year. A participant who fails to complete 500 hours of service does not cease to be a participant if the absence occurred because of a leave of absence. Under both the pre- and post-1976 Plans, military service satisfies the leave of absence requirement and therefore does not prevent participation in the Plan.

Under the terms of the Plan, a separate trust fund account is established for each participant employee. As to the allocation of annual contributions by the Company, the Plan provides as follows:

Section 7.2 *Allocation of Annual Contributions.* Contributions of the Employer shall be allocated to the respective Participant's Employer Contributions Account as of the end of the Plan Year for which the contribution is made pro rata according to the ratio each Participant's Annual Compensation bears to the total Annual Conpensation of all Participants for that Plan Year . . . .

Distribution of plan proceeds are made only upon the happening of one of the following events: (1) the employee's retirement, (2) his disability, (3) his death, or (4) his termination of employment other than by reason of retirement. In order to provide funds for the death payment, approximately 25% of each year's contributions made for an employee participant is used to buy life insurance to provide a current death benefit for that employee's family. If an employee dies, his beneficiary receives not only the life insurance proceeds, but also the remainder of the participant's profit-sharing account. Likewise, if an employee retires or becomes disabled, the Plan provides that all of the attributable contributions are immediately available to that employee regardless of seniority.

As to a participant who terminates his employment with the Company for any reason other than death, disability, or retirement, he will receive the following vested interest in the employer contributions made to the Plan: (1) if he has completed less than five years of service, 0%; (2) if he has completed at least five but less than ten years of service, 50%; (3) if he has completed ten or more years of service, 100%.

The plaintiff veteran, Lowe, was employed by the Company from July 19, 1971, until May 13, 1972, when he entered military service. Following completion of military service, the Company reinstated Lowe on May 18, 1976.

The plaintiff veteran, Raypole, was employed by the Company from July 16, 1970, until he entered military service on September 15, 1974. Raypole was reinstated by the Company following his military service on September 12, 1977.

Both of the plaintiff veterans were Plan participants. Upon their return from military service, each veteran was credited by the Company with seniority based upon time spent in the military and was restored to a level of pay based upon that seniority. Each veteran was also credited with the time spent in the military for purposes of determining the vesting percentage for the termination payment. The Company did not, however, contribute to the Plan on behalf of the veterans for the time during which they were in the service.

## II.

The veterans brought suit under the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021 ("the Act"), which provides as follows:

(b)(1) [A returning veteran] shall be restored or reemployed without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces ...

(2) [Such person] should be so restored or reemployed in such manner as to give such person such status in his employment as he would have enjoyed if such person had continued in such employment continuously from the time of such person's entering the Armed Forces until the time of such person's restoration to such employment, or reemployment.

In *Alabama Power Co. v. Davis*, 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977), the Supreme Court adopted a two-pronged test to determine whether a benefit is a perquisite of seniority secured by the Act:[1]

If the benefit would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer, and if it is in the nature of a reward for length of service, it is a "perquisite of seniority." If, on the other hand, the veteran's right to the benefit at the time he entered the military was subject to a significant contingency, or if the benefit is in the nature of short-term compensation for services rendered, it is not an aspect of seniority within the coverage of Section 9.

*Id.* at 589, 97 S.Ct. at 2007.

Applying the test to the facts before it, the Supreme Court held that pension payments are predominantly rewards for continuous employment and therefore subject to the requirements of the Act. *Id.* at 594, 97 S.Ct. at 2010. The Court expressly withheld its views on whether defined contribution plans are to be treated differently from defined benefit plans[2] such as the one before it. *Id.* at 593 n. 18, 97 S.Ct. at 2009 n. 18.

In applying the reasonable certainty prong, the Court looked to the veterans' work history both before and after their military tour of duty and concluded they

---

**1.** In *Alabama Power* the Court was interpreting Section 9 of the Military Selective Service Act of 1967. The provisions of that statute relating to veterans' reemployment rights were reenacted without substantive change in the Vietnam Era Veterans' Readjustment Assistance Act of 1974. *See Coffy v. Republic Steel Corp.,* 447 U.S. 191, 194 n. 2, 100 S.Ct. 2100, 2103 n. 2, 65 L.Ed.2d 53 (1980).

**2.** Under a "defined benefit" plan, the benefits to be received by employees are fixed and the employer's contribution is adjusted to whatever level is necessary to provide those benefits. Under a "defined contribution" plan, the employer's contribution is fixed and the employee receives whatever level of benefits the amount contributed on his behalf will provide. *Alabama Power,* 431 U.S. at 593 n. 18, 97 S.Ct. at 2009 n. 18.

would almost certainly have accumulated the required accredited service. *Id.* at 591, 97 S.Ct. at 2008. As to the second prong, the Court held that the true nature of the pension payment is a reward for length of service, and considered the most significant factor the twenty years of service required before the pension rights vested in the employee. *Id.* at 593, 97 S.Ct. at 2009.

Three other Supreme Court cases interpreting the Act or prior similar statutes[3] merit some discussion. In *Accardi v. Pennsylvania R. Co.*, 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966), the Court held that the Act required the employer to credit petitioners for time spent in military service for the purpose of calculating severance payments. The Court stated that "the real nature of [the] payments was compensation for the loss of jobs." *Id.* at 230, 86 S.Ct. at 772; *see also Alabama Power*, 431 U.S. at 588, 97 S.Ct. at 2006.

Vacation benefits were the subject of *Foster v. Dravo Corp.*, 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975). As in *Accardi*, the Court focused on the nature of the benefit and held that vacation benefits are "intended as a form of short-term compensation for work performed," *id.* at 100, 95 S.Ct. at 884, "not as a reward for longevity with an employer." *Alabama Power*, 431 U.S. at 589, 97 S.Ct. at 2007 (footnote omitted).

Finally, in *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980), the Court held that the veteran, who had been placed in lay-off status upon reinstatement by his employer following military service, was entitled to credit for the time spent in military service for the purpose of determining the amount of supplemental unemployment benefits paid by the employer. The Court concluded that the purpose of Supplemental Unemployment Benefit Plans ("SUB's") is to provide employment security rather than to afford additional compensation for work actually performed, and that SUB's are analogous to severance payments, *i.e.*, they are "compensation for loss of jobs." *Id.* at 200, 100

S.Ct. at 2107 (quoting *Accardi*, 383 U.S. at 230, 86 S.Ct. at 772).

### III.

#### A.

As it applies to the facts in the case *sub judice*, the second prong of the *Alabama Power* test will be discussed first. Such requires a determination as to whether the benefit is in the nature of short-term compensation for services rendered or instead a reward for length of service. The predominant feature of profit sharing plans generally is that they are intended to be an incentive for productivity:

> [Profit sharing] plans are directly related to work performed as reflected in salary, rather than period of employment. In addition, because such plans are based on the company's earnings during a given year, they are designed to stimulate initiative among employees during that year.

*The Supreme Court, 1965 Term*, 80 Harv. L.Rev. 91, 149 (1966–67). The Income Tax Regulations state: "A profit-sharing plan within the meaning of section 401 is primarily a plan of deferred compensation, ...." Treas.Reg. § 1.401–1(b)(1)(ii) (1982). Thus, the common conception of a profit sharing plan is that it represents compensation for work performed.

This finding only begins our inquiry. We must explore the specific profit sharing plan before us "to determine whether [it] support[s] or contradict[s] our understanding of the general purpose" of such plans. *Coffy*, 447 U.S. at 201, 100 S.Ct. at 2107.

In *Foster, supra*, the Court stated:

> Generally, the presence of a work requirement is strong evidence that the benefit in question was intended as a form of compensation. Of course, as in the *Accardi* case, the work requirement may be so insubstantial that it appears plainly designed to measure time on the payroll rather than hours on the job; in

---

**3.** *See supra* note 1.

that event, the Act requires that the benefit be granted to returning veterans. But where the work requirement constitutes a bona fide effort to compensate for work actually performed, the fact that it correlates only loosely with the benefit is not enough to invoke the statutory guarantee.

420 U.S. at 99–100, 95 S.Ct. at 884.

Defendant Chemi-Trol's Profit Sharing Plan only permits participation by employees who have worked one thousand hours during the year and who are employed on the last day of the year. This requirement is clearly more substantial than that in *Accardi*, where the amount of the benefit was tied to the length of "compensated service" which was defined in terms of months in which an employee worked at least one day. Such a work requirement is "plainly designed to measure time on the payroll rather than hours on the job ...." *Id.*

In addition, the Plan provides for contributions on the basis of the employee's compensation for the year. In conjunction with the 1,000 hour work requirement, the contribution formula represents a bona fide effort to compensate for work actually performed. As the Court stated in *Alabama Power,* the Act *"does not grant veterans the right to compensation for work they have not performed, ...."* 431 U.S. at 592, 97 S.Ct. at 2008 (Emphasis supplied).

Defendant Chemi-Trol's Profit Sharing Plan is distinguishable from the pension plan in *Alabama Power* in the following respects:

(1) Contributions to Chemi-Trol's Profit Sharing Plan are based upon profits being made in a given year, whereas the employer in *Alabama Power* was required to make contributions at a fixed amount in good times and bad, regardless of the existence of profits.

(2) Chemi-Trol has the discretion under its Plan not to make any contributions, whereas the employer in *Alabama Power* was required to make contributions in a fixed amount.

(3) Three of the four events affording distribution of proceeds (retirement, death, and disability) provided in Chemi-Trol's Plan do not have a years of service or seniority requirement, whereas an employee covered by the pension plan in *Alabama Power* had no vested right to any benefit from the Plan until he had completed 20 years of service or had completed 15 years of service and attained the age of 50. Chemi-Trol's Profit Sharing Plan gives full credit for military service for the one distribution event contingent upon a service requirement, *i.e.,* the right to 50% of a participant's account or 100% of a participant's account after the passage of 5 or 10 years upon termination of employment other than by reason of death, disability, or retirement.

(4) Chemi-Trol maintains individual profit-sharing accounts for each of its employees into which contributions are allocated at the end of each year, whereas the employer in *Alabama Power* maintained a single fund for all its employees.

(5) Chemi-Trol's yearly contributions to the Plan are based upon that portion of the distributed profits that the employee helped earn, whereas under the pension plan in *Alabama Power* both the cost to the employer and the payment to the employee depended directly on the length of time the employee worked for that employer.

(6) Chemi-Trol's Profit Sharing Plan does not define or guarantee any retirement payment, whereas the pension plan in *Alabama Power* was a defined benefit plan which promised a retirement benefit calculated on the basis of years of service.

Despite these differences, the district court held that the right to the contributions represents a reward for length of service. Two of the distributions provided by the Plan, death and disability payments, however, vest immediately. As to the retirement distribution, a participant with only one or two years of service will receive the entire profit sharing account upon reaching retirement age and the account's value is not conditioned upon any years of

service such as that which existed in *Alabama Power*. The district court, however, concentrated on the termination payment which requires five or ten years' service in order to vest. We view this as error for several reasons.

Under the terms of the Plan, the plaintiff veterans were credited with years of service for the period during which they were in military service for the purpose of determining the vesting of the retirement payment. We are of the opinion that this is all that the Act requires. A similar situation existed in *Foster, supra.* Although the Supreme Court held that the Act did not apply to vacation benefits in *Foster*, it noted that since the length of the vacation increased with the employee's length of employment, the veteran's time in the service must be counted in determining the length of future earned vacations. *See Foster*, 420 U.S. at 101 n. 9, 95 S.Ct. at 885 n. 9. Thus, the Court looked to the true nature of the benefit in determining the applicability of the Act and implicitly approved the selective application of the Act to those aspects of the benefit with a length of service requirement.

The district court erred in failing to evaluate the Plan as a whole in determining its true nature. The fact that three of the four benefits have no length of service requirement refutes a finding that the Plan represents a perquisite of seniority, especially since the Plan provided for the crediting of military service time toward the vesting of the termination benefit.

In our opinion, to order the contributions sought by the plaintiffs would be more than the Act requires:

> [The Act] does not guarantee the returning serviceman a perfect reproduction of the civilian employment that might have been his if he had not been called to the colors. Much there is that might have flowed from experience, *effort*, or chance to which he cannot lay claim under the statute. [The Act] does not assure him that the past with all its possibilities of betterment will be recalled. *Its very important but limited purpose is to assure that those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment will not be denied the veteran because of his absence in the military service.*

*McKinney v. Missouri-Kansas-Texas R. Co.*, 357 U.S. 265, 271–72, 78 S.Ct. 1222, 1226, 2 L.Ed.2d 1305 (1958) (Emphasis supplied).

Under the district court's order, the trustee must redistribute the trust's earnings and forfeitures in creating accounts for the plaintiffs herein. Compliance with the order would require that money will have to be withdrawn from the accounts of employees who worked and generated the Company's profits during the plaintiffs' military service years. We do not believe that Congress intended the Act to operate such that veterans share in the earnings from profits which they did not create at the expense of those who did. The district court's order is in sharp contrast to the result of *Alabama Power*. Since the Alabama Power Company's pension plan was a defined benefit plan, the adjustments required by the Court's decision did not come "from the pockets" of other employees.

The plaintiffs argue that *Coffy, supra,* supports their position because the defendant's Profit Sharing Plan, like supplemental unemployment benefits, is intended to provide employment security, a function similar to traditional forms of seniority. The plaintiffs note that defendant provided no other retirement benefits, and, that as a practical matter, the age requirement as to retirement benefits means that most workers will have to remain with the defendant company a substantial number of years. The plaintiffs also point to the initial one-year employment eligibility requirement and the fact that the right to the termination payment vests over five and ten years as demonstrating that the payments are tied to longevity of service.

However, since the Plan provides for the crediting of time spent in the military in determining the one-year eligibility as well as for the termination vesting require-

ments, the plaintiff veterans are treated identically to returning non-veterans. As to the age requirement for the retirement payments, it is nonetheless true that the right to the payment vests without any years of service requirement. Further, employers are under no duty to establish pension plans. *Moore v. Reynolds Metals Company Retirement Program,* 740 F.2d 454, 456 (6th Cir.1984).

We cannot deny that defendant's Plan contains some length of service requirements and may have been intended in part to provide employment security. Nonetheless, viewed as a whole, we are of the opinion that the "real nature" of the Plan is short-term compensation for work performed by employees rather than a reward for the length of their services.

## B.

In addition to plaintiffs' failure to meet the second prong of the *Alabama Power* test, we are also of the opinion that the plaintiff veterans have failed to meet the first prong of the test. Our holding as to this is due to the fact that the contributions by the defendant, Chemi-Trol, would not have occurred "with reasonable certainty" because such were subject to a "significant contingency." *Alabama Power,* 431 U.S. at 589, 97 S.Ct. at 2007.

The first prong of the *Alabama Power* test requires a determination as to whether "the benefit would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer," or on the other hand, whether "the veteran's right to the benefit at the time he entered the military was subject to a significant contingency, ...." 431 U.S. at 589, 97 S.Ct. at 2007. In *Alabama Power* the Court looked to the veteran's work history both before and after the military service.

In the case *sub judice* the district court based its finding of reasonable certainty on its review of the plaintiff veterans' work history. We do not, however, believe that work history is the only factor to be considered, as it represents only a part of the Supreme Court's formulation of the test.

There must also be a finding that the right to the benefit was not subject to a significant contingency.

Defendant insists that its Plan contains three contingencies, aside from the work history of the veterans, which prevent the accrual of the contributions from occurring with reasonable certainty. First, no contributions are made unless profits occur. Second, even if there are profits, defendant's board of directors in its absolute discretion must decide to make additional contributions. Third, a participant can receive a contribution only if he actually earned compensation during the year for which the contribution is made.

The plaintiff veterans argue that the first two contingencies, the existence of profits and the Board's decisions, represent "employer practices" which cannot be the basis for the denial of benefits granted under the Act, citing *Alabama Power,* 431 U.S. at 592, 97 S.Ct. at 2008. That language, however, was tied to the Supreme Court's discussion of whether the benefit is a perquisite of seniority. The Court instructed that an employer cannot defeat the application of the Act by disguising a time requirement as a work requirement.

The relevant language concerning the reasonable certainty test is found at 431 U.S. 591–92, 97 S.Ct. at 2008, where the Court stated:

Unpredictable occurrences might have intervened, but "we cannot assume that Congress intended possibilities of this sort to defeat the veteran's seniority rights." (quoting *Tilton v. Missouri Pac. R. Co.,* 376 U.S. 169, 181, 84 S.Ct. 595, 602 [11 L.Ed.2d 590] (1964)).

The "unpredictable occurrences" the court referred to were the availability of work, satisfactory performance by the employee, sickness and the like. This interpretation dictates a conclusion that the possibilities that the plaintiff veterans might not have earned a particular level of compensation or that profits might not have been earned are irrelevant in evaluating the reasonable certainty test.

The employer's discretion to make contributions, however, is relevant to the inquiry:

> ... where [the benefit] depends on an employer's discretionary choice not exercised prior to entry into service, a returning veteran cannot show within the reasonable certainty required by the Act that he would have enjoyed [the benefit] simply by virtue of continuing employment during the time he was in military service.

*Tilton,* 376 U.S. at 180; 84 S.Ct. at 602 (construing *McKinney v. Missouri-Kansas-Texas R. Co.,* 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958)) (footnote omitted). This holding was cited with approval in *Alabama Power,* 431 U.S. at 585, 97 S.Ct. at 2005. It follows from these cases that the discretion vested in defendant's board of directors as to whether to award contributions prohibits a finding that the contributions would have occurred with reasonable certainty.

### C.

One final argument raised by defendant Chemi-Trol, although not dispositive in our opinion, deserves discussion. Chemi-Trol argues that the district court's order creates an unnecessary conflict between the Act and the Internal Revenue Code. Chemi-Trol's Plan is designed to create a "qualified trust" under I.R.C. section 401 such that its contributions are deductible and its employees receive deferred tax treatment. Subsection (a)(16) of section 401 provides that the trust will not qualify if the plan provides for contributions which exceed the limitations of I.R.C. section 415. Section 415(c)(1) provides that annual contributions shall not exceed the lesser of $25,000 ($30,000 for tax years beginning in 1983) or 25% of the participant's compensation.

Defendant Chemi-Trol argues that a contribution based on a hypothetical compensation, as ordered by the district court, will violate I.R.C. section 415. The only provision that permits a contribution to be based on hypothetical compensation is found in I.R.C. section 415(c)(3)(C) which applies to allocations for permanently or totally disabled employees. Defendant argues that by negative implication Congress did not intend for contributions to be based on hypothetical compensation outside of the narrow category found in section 415(c)(3)(C). We do not find this argument dispositive for two reasons. First, counsel for defendant has not been able to present any authority whatsoever wherein the I.R.S. disqualified a plan on this basis. Second, if we were convinced that Chemi-Trol's Plan was subject to the Vietnam Era Veterans' Readjustment Assistance Act, we would affirm the district court even in the face of certain disqualification of the Plan.

The conflict presented by defendant Chemi-Trol between the Act and the Internal Revenue Code, however, does lend support to our decision. Implementation of the *Alabama Power* holding did not adversely affect the favorable tax status of the plan. Our decision today similarly avoids any potential disqualification, and we believe it represents a harmonious interpretation of both statutes.

### IV.

As we have determined (1) that the true nature of the defendant's Profit Sharing Plan represents short-term compensation for work performed and (2) that the plaintiffs' rights to contributions under the Plan were subject to a significant contingency at the time they entered the military service, we hold that the contributions sought by the plaintiffs are not perquisites of seniority and accordingly reverse the decision of the district court.